**State v. Evans**
*[Cite as 3 AOA 177]*

*Case No. 54883*
*Cuyahoga County, (8th)*
*Decided May 10, 1990*

John T. Corrigan, Prosecutor, Jack H. Hudson, Assistant, Michael J. Russo, Assistant, Justice Center, Courts Tower, 1200 Ontario Street, Cleveland, Ohio 44113, for Plaintiff-Appellee.

Joann Bour-Stokes, Dale A. Baich, Asst. State Public Defenders, Ohio Public Defender Comm., 8 E. Long Street, 11th Floor, Columbus, Ohio 43266-0587, for Defendant-Appellant.

SWEENEY, J.

Defendant-appellant Derrick Evans appeals his convictions of aggravated murder with specifications, attempted murder, aggravated robbery and aggravated burglary with specifications, and the resulting death sentence imposed by the trial court.

On the evening of March 25, 1987, around 8:00 p.m., co-defendant Michael Frazier was involved in a disturbance at his place of employment, Lempco Industries. His foreman told him to go home because he was too drunk to work. Michael Frazier left Lempco with his brother, co-defendant Wayne Frazier, and his cousin, appellant.[1]

After leaving Lempco, the trio stopped at Michael Frazier's house, at Wayne Frazier's house and at several bars. Around 10:00 p.m., the group saw Derek Speights as Speights was exiting from a store. The men called Derek Speights over to their car and asked him if his father, Marcellus Williams, was home. After Speights said he was, they told him to tell his father that they would be back to see him. Speights knew the Fraziers, but met appellant for the first time that night.

The defendants came up to the apartment approximately one-half hour later.[2] They were let into the apartment, and once inside, they engaged in conversation for a few minutes. Suddenly, appellant (who had been sitting on a couch) jumped up, put a gun to Marcellus Williams' head and demanded money. Wayne Frazier ran over to JoAnn Richards (Williams' girlfriend) and began stabbing her. Appellant knocked Speights down, and Michael Frazier tied Speights' hands with a towel and began stabbing him. Speights was also hit alongside the head with a gun. Appellant knocked Williams down, tied him up with a telephone cord, and stabbed and hit Williams. Appellant also removed money from Williams' pocket. Appellant was constantly shouting orders to Wayne and Michael Frazier. Speights observed Wayne Frazier remove a television set from a bedroom, then he heard all three run out of the apartment.[3]

Speights, who had been stabbed twenty-one times, managed to pull himself up and roll down the stairs outside the apartment. Once outside of the apartment building, Speights collapsed on the sidewalk. A man from a downstairs apartment found him conscious and called an ambulance. The police were immediately dispatched to the scene.

Patrolman Rick Farinacci was in his zone car when he received a radio assignment to respond to a report of a stabbing. Farinacci arrived at approximately midnight. EMS was already on the scene. Farinacci went up to Apartment 3248 (located at East 40 Street and Central Avenue) and discovered the front door partially open. Inside the apartment, Farinacci observed the body of a male on the floor near the door and the body of a woman on the couch. Farinacci searched the apartment and saw feet underneath a bed. The feet belonged to the seven-year-old, Albert Richards. Albert Richards was able to supply Farinacci with Wayne Frazier's name. Farinacci then obtained a description of the suspect's car and Wayne Frazier's address.

As Farinacci pulled up to Wayne Frazier's address, he noticed another zone car pulling away from the curb with its overhead lights on, attempting to stop a car fitting the description of the suspect's car. The police gave chase, and after a short period, Wayne Frazier was caught and arrested. Because Wayne Frazier had a cut on his hand, the police first took him to Charity Hospital for treatment.

Detective Timothy Patton worked on the follow-up assignment. He interviewed Wayne Frazier, who directed the police to different areas of Cleveland. In an abandoned service station lot at the northeast corner of East 113 Street and Harvard, the police found personal papers belonging to Williams, a Buck folding knife (State's Exhibit No. 16), a prescription bottle made out to one of the victims, a shoe tree, and a broken television set. At a park area on East 143 Street, the police uncovered burnt clothing and a cologne bottle. (Earlier, the police found the other knife, offered as Exhibit No. 17, at Bushnell Court.)

In a statement given to Patton, Wayne Frazier admitted he was involved in the crime, but denied killing anyone.

Appellant was arrested on May 29, 1987 in Columbus, Ohio. The Columbus police wanted to question appellant as a suspect in an unrelated case of purse-snatching. When the police tracked down appellant to the rooming house where he was staying, appellant was found in the basement threatening to kill himself. Appellant gave the police his name and blurted out that he did not "kill those people in Cleveland," that he knew who was responsible, but that he did not want to "rat" on them.

Dr. John Daniels performed the autopsy on the bodies of Marcellus Williams and JoAnn Richards. Daniels noted nine stab wounds on

Williams and thirty-four stab wounds on Richards. The superficial wounds could have been made with either State's Exhibits No. 16 or 17. The deeper wounds could have been caused by State's Exhibit No. 17. Daniels identified the cause of death to be homicide.

Linda Luke, a forensic serologist, collected evidence at the scene. She noted that the blood found down the apartment building stairs was type B, Speights' type of blood. The blood found on a baby blanket was type O, which was determined to be JoAnn Richards' type. The blood discovered on a tape recorder found in the apartment and tennis shoes belonging to Wayne Frazier was type A, the type of blood Williams had. State's Exhibit No. 16, a buck knife measuring eight and one-half inches in length, did not have any blood on it, while State's Exhibit No. 17, a knife measuring twelve inches, contained type B blood.

Appellant, Wayne and Michael Frazier were indicted for the aggravated murders of Marcellus Williams and JoAnn Richards and the attempted murder of Derek Speights.[4] Specifically, appellant was indicted for:

"(1) two counts of aggravated murder (R.C. 2903.01), each count carrying an aggravated felony specification, a gun specification, a mass murder specification, a felony murder specification, and a repeat murder specification;

"(2) one count of aggravated burglary (R.C. 2911.11);

"(3) one count of attempted murder (R.C. 2903.02); and

"(4) two counts of aggravated robbery" (R.C. 2911.01). The last four counts contained two aggravated felony specifications and one gun specification.

Appellant proceeded to trial on all the charges except the prior murder specification, which appellant elected to have the judge consider instead of the jury. The jury found appellant guilty of all counts in the indictment except the felony murder specification. The court conducted a hearing on the prior murder specification and convicted appellant on that specification, also. Accordingly, the mitigation hearing proceeded with two capital specifications.

At the conclusion of the mitigation hearing, the jury recommended a death sentence. The trial court accepted the jury's recommendation and sentenced appellant to death. The court also sentenced appellant to three years actual incarceration on the gun specification and fifteen to twenty years for the aggravated robbery and aggravated burglary charges. Appellant now appeals and raises twenty-four assignments of error for our review.

I.

Appellant's first assignment of error states: "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT EVANS' (SIC.) BY GIVING THE JURY AN IMPROPER INSTRUCTION CONCERNING ACCOMPLICE TESTIMONY. THE INSTRUCTION FAILED TO COMPLY WITH R.C. 2923.03(D) AND VIOLATED MR. EVANS' RIGHT UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."

On September 17, 1986, the Ohio legislature amended R.C. 2903.03(D). The new version of that section eliminated the need for evidence to corroborate an accomplice's testimony, but required the court to instruct the jury about its suspect credibility. As the offense occurred on March 25, 1987, appellant was entitled to have the jury instructed under the new version. However, the trial court gave the former R.C. 2923.03(D) instruction.

Defense counsel failed to object to the erroneous instruction. The failure to object to an erroneous jury instruction constitutes a waiver of the issue on appeal unless, but for the error, "the outcome of the trial clearly would have been otherwise." *State* v. *Long* (1978), 53 Ohio St. 2d 91, 96; *State* v. *Underwood* (1983), 3 Ohio St. 3d 12, 13. The plain error rule is to be invoked only in exceptional cases to avoid a miscarriage of justice. *Id.*

In the instant case, ample evidence corroborated the accomplice's testimony. Derek Speights, a victim, testified that appellant, equipped with a gun and knife, was the ringleader and, in addition to giving orders to Wayne and Michael Frazier, also took part in stabbing and robbing at least one of the victims. This evidence would permit reasonable jurors to find appellant guilty, even if the accomplice had not testified. Thus, this Court is unable to conclude that, but for the error, the outcome of the trial would have been otherwise. We overrule the first assignment of error.

II.

Appellant's second assignment of error states:

"APPELLANT EVANS WAS DEPRIVED OF HIS RIGHTS TO A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY

THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION, WHEN PROSECUTORIAL MISCONDUCT OCCURRED DURING THE GUILT AND MITIGATION PHASES OF HIS CAPITAL TRIAL."

The appellant argues that prosecutorial misconduct occurred as a result of:

"(1) the prosecutor's remarks made during his closing argument in the mitigation phase making reference to appeal, pardon, commutation and escape as avenues for appellant to return to society (Tr. 1258-59);

"(2) the prosecutor's remarks during the guilt and mitigation phases concerning the effect of JoAnn Richards' death on her son, Albert (Tr. 1004, 1008, 1256);

"(3) the prosecutor's reference during the mitigation phase to Angus Barry, the victim in appellant's prior murder conviction (Tr. 1265); and

"(4) remarks made by the prosecutor during the guilt and mitigation phases allegedly urging a verdict of guilty and the death penalty to achieve justice (Tr. 1019, 1266)."

The standard of review relative to prosecutorial misconduct was stated in *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, 268:

"Ohio courts have suggested that the effect of counsel's misconduct 'must be considered in the light of the whole case.' See e.g. *Mikula* v. *Balogh* (1965), 9 Ohio App. 2d 250, 258 [38 O.O.2d 311]. And where misconduct of counsel '* * *is of such a prejudicial character that the prejudice resulting therefrom cannot be eliminated or cured by prompt withdrawal, and admonition and instructions from the court of the jury to disregard it, a new trial should be granted, or the judgment reversed, notwithstanding cautions, admonition, and instructions by the trial judge.' *Book* v. *Erskine Sons, Inc.* (1951), 154 Ohio St. 391, 401 [43 O.O. 334].

"In general terms, the conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial." *State* v. *Papp* (1978), 64 Ohio App. 2d 203, 211 [18 O.O.3d 157]; *State* v. *Wade* (1978), 53 Ohio St. 2d 182, 186 [7 O.O.3d 362]; *State* v. *DeNicola* (1955), 163 Ohio St. 140, 148 [56 O.O. 185]; *Scott* v. *State* (1923), 107 Ohio St. 475, 490-491. This, then, is the point at which we begin in our analysis of this issue.

Whether a prosecutor's comments in closing argument constitute prejudicial error was ad-dressed in *State* v. *Smith* (1984), 14 Ohio St. 3d 13, where the court, at pp. 13-14, stated:

"The prosecution is normally entitled to a certain degree of latitude in its concluding remarks. *State* v. *Woodard* (1966), 6 Ohio St. 2d 14 [35 O.O.2d 8], certiorari denied (1966), 385 U.S. 930; *State* v. *Liberatore* (1982), 69 Ohio St. 2d 583, 589 [23 O.O.3d 489]. A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones. *Berger* v. *United States* (1935), 295 U.S. 78, 88. The prosecutor is a servant of the law whose interest in a prosecution is not merely to emerge victorious but to see that justice shall be done. It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury." *United States* v. *Dorr* (C.A. 5, 1981), 636 F.2d 117.

The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially (sic.) affected substantial rights of the defendant. *United States* v. *Dorr, supra*, at 120. To begin with, the prosecution must avoid insinuations and assertions which are calculated to mislead the jury. *Berger* v. *United States, supra*, at 88. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. *State* v. *Thayer* (1931), 124 Ohio St. 1; DR 4-106(C)(4) of the code of Professional Responsibility. Moreover the code provides that an attorney is not allude (sic.) to matters which will not be supported by admissible evidence; DR 7-106(C)(1), and "* * * [a] lawyer should not make unfair or derogatory personal reference to opposing counsel. * * *" EC 7-37.

The first comments to which the appellant claims error are the following, made by the prosecutor during his closing remarks in the mitigation phase:

PROSECUTOR

MR. HUDSON: " And what did he get for the first murder? You heard him. I got life imprisonment. Those were his words. That's what he got for the first murder. Life imprisonment. What do you think life imprisonment means? Twelve years later he's out. And inside of three months, he had killed two more people. And they come here and say give us mercy. Life imprisonment?

" Mr. Saferin stands up here and talks to you about years and totals. I could tell you three or

four different ways that that's not a positive thing.

"To start with, these attorneys will never abdicate. It's too soon after conviction to pursue his appeal, number one. Judge --

"MR. CARSON: Objection.

"THE COURT: Objection sustained.

"MR. HUDSON: Life imprisonment.

Number two, when they talk about pardon, no, they don't mention that. Commutation.

"MR. CARSON: Objection.

"THE COURT: Objection sustained. Ladies and gentlemen of the jury, your consideration is going to be on the facts in this case and the instructions of law that I give you that apply to the facts in this case.

You may proceed.

"MR. HUDSON: Life imprisonment. Escape. All these are possible.

"MR. CARSON: Objection.

"THE COURT: Objection sustained.

"MR. HUDSON: In any event, he told you he was sentenced to life imprisonment 12 years ago. And he was out for two or three months." (Tr. 1257-59)

Appellant specifically objects to the use of the words "appeal," "pardon," "commutation" and "escape," thereby implying that avenues existed to allow the appellant to return to society absent a death verdict.

As used in the foregoing excerpt, the reference to "appeal" would not lead the jury "to believe that the responsibility for determining the appropriateness of the defendant's death sentence rests elsewhere." *Caldwell* v. *Mississippi* (1985), 472 U.S. 320, 328-29. Coupling the fact that appellant's objection to the references was sustained by the trial court, we do not find any prejudice to the appellant.

Any prejudice which may have occurred by reference to the words "pardon," "commutation" and "escape" was equally minimized by the trial court sustaining appellant's objections and the curative instruction issued to the jury.

The second set of alleged inflammatory remarks from which appellant claims error are those concerning the effect of JoAnn Richards' death on her son, Albert, made during closing argument in both the guilt and mitigation phase of the trial:

"Then the little boy had to come out and see his mother being stabbed 22 times. (Tr. 1004).

"* * *

"I do know this. They said this two days after it occurred. They took statements from each

of them and the statements that they took from those two men, young men, child in one case --the poignant aspect, when you stop to think about it, a young man watching his mother murdered with 22 stab wounds and crawling under the bed and coming out when the police officers found him saying, 'Don't shoot. I'm only a kid. I'm only a kid.' (Tr. 1007-08).

"* * *

"Look at these pictures. These people were alive. It isn't just their lives destroyed. Albert is destroyed. His mother is dead. You think that the memory of his mother being stabbed some 30 times is not impressed in that young man's psychic? (sic.) Do you think he will ever escape that from seven years old? (Tr. 1256)."

Appellant failed to raise an objection to these comments at trial. Any claimed error is therefore waived. Cf. *State* v. *Awan* (1986), 22 Ohio St. 3d 120. Further, under the evidence presented, plain error was not present.

The third area of alleged prosecutorial misconduct is the prosecutor's reference to Angus Barry, the victim in appellant's prior murder conviction, during closing argument in the mitigation phase:

"[MR. HUDSON]: Three lives gone. Who knows how many lives ruined, destroyed. Does he deserve the maximum penalty? Look at these photos. You won't see Angus Barry here. He is a young man of 17 years old and --

"MR. CARSON: Objection.

"THE COURT: Sustained.

"MR. HUDSON: -- dead.

"MR. CARSON: May we approach the bench?

"THE COURT: No.

"MR. HUDSON: He killed before. Angus Barry --

"MR. CARSON: Objection.

"THE COURT: Sustained." (Tr. 1265).

The court correctly sustained appellant's objections to the remarks in the foregoing excerpt. Any prejudice to the appellant was slight due to the court's instructions to the jury that closing arguments are not evidence and should not be considered as evidence in its determination. (Tr. 1273). Prejudice was likewise minimized due to the fact that the jury had already received evidence of the appellant's prior murder conviction and the name of the victim in that previous case.

The fourth and final area of alleged prosecutorial misconduct concerns remarks in the clos-

ing arguments of the guilt and mitigation phases concerning the call for "justice":

"[MR. HUDSON]: Take the witnesses -- obviously you will have to weigh their testimony extremely carefully. You have to come to a conclusion that result in justice because that is the purpose of a jury, justice

"There are two people dead and another so severely wounded, 21 stab wounds. Justice, justice in our community.

"I call upon you to be true to your oath to well and truly try this case. Don't let any smoke get in your eyes. Think of the evidence you heard from that witness stand and come back with a verdict that is appropriate in this case, and that is guilty of every count, guilty on every specification, guilty of the carnage that he committed on this family.

Thank you, ladies and gentlemen.

"THE COURT: Thank you, Mr. Hudson." (Tr. 1019-20).

"[MR. HUDSON]: So, now penalize him. Penalize him to the maximum within your power. He has perpetrated the maximum crime. They asked for mercy. The State of Ohio and all the people in it ask for justice. I ask you to follow the law. The law is clear. You are highly intelligent people. Follow the law.

Thank you, your Honor.

"THE COURT: Thanks, Mr. Hudson." (Tr. 1266).

Appellant failed to object to these remarks, thus waiving any error. Furthermore, we cannot say that the determination of the jury would have been different but for the claimed error. Crim. R. 52(B).

Accordingly, this assignment is overruled.

### III.

Appellant's third assignment of error states:

"IT IS UNCONSTITUTIONAL TO EXECUTE APPELLANT EVANS SINCE HE HAS AN IQ OF 64. TO DO SO WOULD VIOLATE THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

The Supreme Court of the United States discussed the mitigation effect of a mentally retarded defendant in a capital case in *Penry* v. *Lynaugh* (1989), 109 S. Ct. 2934. In that case, the court held that "executing mentally retarded persons convicted of capital offenses is not categorically prohibited by the Eighth Amendment." *Penry, supra*, at 2934. The Court further held that the jury must be given the opportunity to fully consider and give effect to evidence that mitigates against the death penalty.

In the present case, the jury was apprised of appellant's mental capacity during the mitigation phase of the proceedings, and the jury was charged with that being a mitigating factor under R.C. 2929.04(B)(3). (Tr. 1278-79). The jury had the opportunity to give effect to that mitigating factor on the verdict form in its determination of whether the aggravating circumstances outweighed the mitigating factors. The jury decided that the mitigating factors did not outweigh the aggravating circumstances and recommended the death penalty. We will not disturb that finding by this assignment of error, which is hereby overruled.

Assignments of error four and seven will be discussed jointly as they raise common questions of law and fact. These two assignments state:

### IV.

"APPELLANT EVANS' CAPITAL SPECIFICATION BASED ON HIS PRIOR MURDER IS INVALID. HIS CONVICTION FOR AND SUBSEQUENT SENTENCING ON THAT SPECIFICATION VIOLATED THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

### VII.

"THE USE OF APPELLANT EVANS' PRIOR MURDER, COMMITTED AT THE AGE OF SIXTEEN, TO BOOTSTRAP HIS AGGRAVATED MURDER TO CAPITAL MURDER, VIOLATED MR. EVANS' RIGHTS AS GUARANTEED BY THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

The appellant attempts to argue that his plea to the prior murder in 1975 was invalid due to his alleged incompetency at the time of the plea. Due to this allegedly invalid plea, he further argues that its use as a prior murder specification, pursuant to R.C. 2929.04(A)(5), in the present case is improper.

It must be stressed that the appellant was found competent to stand trial for the offenses in the present case, which were committed after he had reached the age of majority. *See* Competency Report prepared by Dr. Evans on August 19, 1987, attached to appellant's appendix brief at A-27. Cases cited by appellant emphasize, mistak-

enly, actions where offenses at issue were committed during the defendant's minority. *See, Thompson* v. *Oklahoma* (1988), 487 U.S. ___, 101 L.Ed.2d 702, and *Eddings* v. *Oklahoma* (1982), 455 U.S. 104. Such is not the case here.

Appellant's attempt to attack his prior plea at this time is not well taken. Any attack on the validity of that former plea must be done by way of proper post-conviction proceedings in that prior case. R.C. 2953, *et seq.* Since that plea had not been invalidated, it was proper to consider the prior murder conviction as an aggravating circumstance in the present case.

Accordingly, these assignments are overruled.

### V.

Appellant's fifth assignment of error states:
"APPELLANT EVANS WAS IMPROPERLY CONVICTED AND SENTENCED FOR THE COURSE OF CONDUCT SPECIFICATION CONTAINED IN R.C. 2929.04(A)(5) AND THE PRIOR MURDER SPECIFICATION IN R.C. 2929.04(A)(5) IN VIOLATION OF THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

Appellant contends that the jury's finding of not guilty as to the felony murder specification [R.C. 2929.04(A)(7)] precluded his convictions of the other capital specifications of prior murder and course of conduct [R.C. 2929.04(A)(5)].

This argument is without merit. In *State* v. *Mapes* (1985), 19 Ohio St. 3d 108, 112-13, the court upheld a death sentence where the jury found the defendant guilty of aggravated murder during the course of a burglary and robbery, but not guilty of the felony murder specification. The court noted that the finding of guilt on the third specification involving a prior conviction was sufficient to warrant the death penalty regardless of the findings on the two felony murder specifications. Applying this reasoning to the instant case, we determine that as appellant was found guilty of two other specifications of prior murder and mass murder, appellant's death sentence is warranted.

The fifth assigned error is overruled.

### VI.

Appellant's sixth assignment of error states:
"THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 5, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION GUARANTEE AN ACCUSED A RIGHT TO A FAIR AND IMPARTIAL TRIAL BY JURY. THE INEFFECTIVE ASSISTANCE OF COUNSEL WHICH APPELLANT RECEIVED RESULTED IN A DENIAL OF APPELLANT'S CONSTITUTIONAL RIGHT TO A FAIR AND IMPARTIAL TRIAL BY JURY."

Appellant submits he was denied the effective assistance of counsel in several instances. However, these alleged irregularities have been separately addressed in other assignments of error and have been found to be without merit. As such, we need not address the counsel-performance component of these grounds. *State* v. *Henderson* (1988), 39 Ohio St. 3d 24, 32.

The sixth assignment of error is overruled.

### VIII.

Appellant's eighth assignment of error states:
"APPELLANT EVANS' RIGHT TO COUNSEL WAS VIOLATED WHEN HIS ARRAIGNMENT OCCURRED WITHOUT THE ASSISTANCE OF COUNSEL AND THE PROTECTIONS PROVIDED IN CRIMINAL RULE 10; THE CONDUCT OF THE ARRAIGNMENT VIOLATED THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND OHIO CRIMINAL RULE 10."

Appellant argues that his right to counsel was violated when his arraignment occurred without the benefit of counsel. This precise argument was rejected in *State* v. *Bonnell* (Oct. 5, 1989), Cuyahoga App. No. 55927, unreported. We see no reason to disturb our previous ruling.

Additionally, appellant asserts that the court failed to comply with Crim. R. 10 when it did not specifically tell him he could request a continuance or that he had the right to refrain from making a statement.

Our review of the arraignment transcript reveals that appellant was adequately apprised of his rights. Appellant cannot claim he was prejudiced by the court's failure to advise him of his right to remain silent as appellant did not make a statement. *Id.*

The eighth assigned error is overruled.

### IX.

Appellant's ninth assignment of error states:
"THE PROSECUTOR'S USE OF PEREMPTORY CHALLENGES TO EXCLUDE PROSPECTIVE JURORS WITH SOME RESERVATIONS ABOUT THE DEATH PENALTY VIOLATED APPELLANT EVANS' RIGHT TO A FAIR AND IMPAR-

TIAL JURY IN A CAPITAL CASE GUARAN-
TEED BY THE EIGHTH, SIXTH AND
FOURTEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION AND
SECTIONS 5, 10 AND 16, ARTICLE I OF THE
OHIO CONSTITUTION."

Prior to the beginning of the voir dire of the special venire, the trial court granted twelve peremptory challenges to each party. The state exercised five of its peremptory challenges and waived four during voir dire. Appellant exercised eight peremptory challenges and waived once. After the jury was selected and sworn in, appellant objected to what he believed was an attempt by the state to "death qualify" the jury through the use of peremptory challenges. (Tr. 531-32).

Notwithstanding appellant's failure to timely object prior to the jury being sworn, we find this assignment to be meritless.

It is clear that the state may not use its peremptory challenges to purposely exclude "any identifiable group in the community which may be the subject of prejudice." *Swain* v. *Alabama* (1965), 380 U.S. 202, 205; *Batson* v. *Kentucky* (1986), 476 U.S. 79. Equally clear is the fact that the state has the presumption that it is using its challenges to obtain a fair and impartial jury to try the case. *Swain, supra,* at 222. This presumption may be rebutted upon a showing that the prosecutor's use of preemptory challenges resulted in a systematic exclusion of those identifiable groups from jury panels. *Swain, supra,* at 224; also, *Batson, supra,* at 87-88.

The Supreme Court of Ohio had cause to review the issue raised in this assignment. In *State* v. *Esparza* (1988), 39 Ohio St. 3d 8, at p. 14, the court stated:

"In *Lockhart* v. *McCree* (1986), 476 U.S. 162, 176-177, the United States Supreme Court held that prospective jurors whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties as jurors in a capital case, *i.e.,* 'Witherspoon-excludables,' are not distinctive, identifiable groups for the requirement that a jury represent a fair cross-section of the community. The court thus upheld the practice of 'death qualifying' a jury. *If those persons who unequivocally oppose the death penalty do not constitute an 'identifiable group' for fair cross-section purposes, even less so do those persons, like the six jurors identified by appellant here, who have some reservations and concerns about the death penalty but state that they are able to put those feelings aside and follow the instructions of the trial court.*

'The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control.' *Swain, supra,* at 220. '[I]t must be exercised with full freedom, or it fails at its full purpose.' " *Lewis* v. *United States* (1892), 146 U.S. 370, 378. (Emphasis added).

In the present case, the state exercised peremptory challenges against the following potential jurors: (1) Miss Cotton; (2) Mr. Harrison; (3) Ms. Waites; (4) Mr. Sandusky; and (5) Mr. Jan. Miss Cotton indicated in camera that her ability to be impartial was in doubt due to criminal charges then pending against her in Juvenile Court. (Tr. 274-75). To save her further embarrassment, the state exercised one of its challenges. Of the remaining four, Mr. Sandusky and Mr. Jan expressed a personal belief against the death penalty. However, all four remaining jurors indicated that they could be impartial and also put aside their personal beliefs and follow the law as given by the judge and apply it based on the evidence. We find no showing of any systematic exclusion of jurors based on their personal view opposing the death sentence.

## X.

Appellant's tenth assignment of error states: "IT WAS ERROR FOR THE TRIAL COURT TO COMMIT THE JURORS IN MR. EVANS' CAPITAL TRIAL TO A DEATH VERDICT DURING INDIVIDUAL VOIR DIRE. SEEKING AND ACQUIRING SUCH A COMMITMENT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 5, 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

During the inquiry with each prospective juror, the trial court informed each juror that if properly proven, the jury may be called upon to recommend the death sentence. Further, the court then asked each juror whether he or she could recommend capital punishment if warranted by the evidence.

The appellant did not object to this questioning at the time. Even had the issue of waiver of error not been apparent, we would still conclude that this assignment is meritless.

Appellant relies on *Witherspoon* v. *Illinois* (1968), 391 U.S. 510, which held that potential jurors may be excused for cause when their opposition to the death penalty is such that they automatically would vote against a sentence of death or would be impaired in determining guilt.

*Witherspoon* was modified by *Wainwright* v. *Witt* (1985), 469 U.S. 412, which held that the proper standard is whether the jurors' views on capital punishment would "prevent or substantially impair the performance of [their] duties as a juror in accordance with [their] instructions and [their] oath." 469 U.S. at 424.

The court's inquiry was reasonably calculated to determine whether the jurors' views regarding capital punishment would prevent or substantially impair the performance of their duties as jurors. The question posed to the jurors by the court was phrased in the subjunctive. As such, the jurors were asked not whether they *would*, in fact, vote for the death penalty, but whether they *could* recommend such penalty if warranted by the facts. The record does not reflect that the jury panel was committed in advance of trial to rendering the death sentence.

Assignments of error number eleven and thirteen will be dealt with jointly as they raise common questions of law and fact. These assignments state:

## XI.

"THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT EVANS IN ADMITTING INFLAMMATORY AND GRUESOME PHOTOGRAPHS OF THE VICTIMS. BY ADMITTING THESE PHOTOGRAPHS, MR. EVANS WAS DENIED A FAIR TRIAL AS GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION.

## XIII.

"THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING INTO EVIDENCE PHOTOGRAPHS DEPICTING PHYSICAL EVIDENCE WHEN SUCH PHYSICAL EVIDENCE WAS ALSO ADMITTED; THE ADMISSION OF THE PHOTOGRAPHS CONSTITUTED CUMULATIVE AND IRRELEVANT EVIDENCE AND VIOLATED OHIO EVIDENCE RULES 401, 402 AND 403, THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."

Appellant takes issue with the following evidence submitted during the guilt phase of the trial on the grounds that it was inflammatory and cumulative:

"A. Autopsy photographs of JoAnn Richards-State's Exhibits 2, 3, 4, 5, 6, 7 and 8.

"B. Autopsy photographs of Marcellus Williams - State's Exhibits 10, 11, 12, 13, 14 and 15.

"C. Crime scene photographs of JoAnn Richards and Marcellus Williams-State's Exhibits 48, 49, 50, 51 and 54." *See,* Assignment of Error No. 11.

The standard of review for the determination of admissibility of photographs was set forth in *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, at paragraph seven of the syllabus:

"Properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number." *Accord, State* v. *Bedford* (1988), 39 Ohio St. 3d 122, 130.

Upon reviewing the record, we note that State's Exhibits 2 through 8, and 10 through 15, were admitted into evidence without objection. (Tr. 905). Any claimed error is therefore waived absent plain error. Such plain error is not evident in the present case as there was substantial other evidence of guilt.

The remaining photographs, *viz.*, State's Exhibits 48 through 51 and 54, show the three views of William' body, one view of Richards' body, and one view of both bodies as they were found at the crime scene.

Although the bodies in the photographs are somewhat bloody, such bloodiness does not render these photographs *per se* inadmissible. *State* v. *Woodwards* (1966), 6 Ohio St. 2d 14, 25. We find that these photographs have probative value in that they are relevant to the cause of death and are illustrative of testimony of state witnesses concerning the crime scene and cause of death. These photographs were kept to a small number, and their admission did not result in reversible error. We conclude that the probative value of these photographs outweighed the danger of prejudice to the appellant, and their admission into evidence was not an abuse of the trial court's discretion. *State* v. *Maurer, supra,* at 265.

Appellant also takes issue with the admission into evidence of photographs showing items as they were found by police: "a tape recorder (State's Exhibit 33); a knife (State's Exhibit 31);

the body of Marcellus Williams (State's Exhibits 50-52); and the body of JoAnn Richards (State's Exhibit 54)." *See,* Assignment of Error No. 13.

Appellant claims that the admission of these photographs constituted cumulative and irrelevant evidence in that the actual physical objects depicted in the photographs were also admitted into evidence. *See,* State's Exhibits 16 (the knife), 18 (the tape recorder), 19 and 20 (clothing from the deceased victims).

The photographs were relevant in that they depicted the objects as they were found by the police in their investigation and were illustrative of testimony by state witnesses to that effect. Appellant's assertion that the pictures of the knife and tape recorder were cumulative is without merit. Furthermore, we do not see how appellant was prejudiced by showing those objects as they were found by the police. The pictures showing the two victims and their clothing were duplicative of the actual physical evidence. Showing the victims wearing the clothing adds little to the determination of the cause of death or the scientific testimony of the state's witnesses, particularly after that testimony had explained the tests performed on that clothing and their results and that clothing had been admitted into evidence. Any error, however, was harmless in light of the substantial evidence of guilt in this case.

Accordingly, assignments of error eleven and thirteen are overruled.

### XII.

Appellant's twelfth assignment of error states:

"THE TRIAL COURT ABUSED ITS DIS-CRETION BY FINDING A CHILD UNDER THE AGE OF TEN (10) YEARS OLD COMPE-TENT AS A WITNESS TO TESTIFY AT TRI-AL THEREBY VIOLATING APPELLANTS (SIC.) FIFTH, SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNIT-ED STATES CONSTITUTION AND SEC-TIONS 9, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

Appellant contends the trial court abused its discretion by allowing Albert Richards, age seven, to testify at the trial.

A child who is less than ten years old is incompetent to testify unless the court determines that the child has the ability to observe, recall and relate accurately and to understand the duty to testify truthfully. Evid. R. 601(A); *State* v. *Wallace* (1988), 37 Ohio St. 3d 87, 93, fn. 8.

As the court is in the best position to observe the child's appearance, demeanor, and manner of answering and to note any indication of coaching or instruction, the court's determination will not be disturbed absent an abuse of discretion. *State* v. *Wilson* (1956), 156 Ohio St. 532; *State* v. *Workman* (1984), 14 Ohio App. 3d 385, 389.

Albert Richards was previously determined by the same judge to be competent to testify as a witness in Wayne Frazier's trial. This ruling was affirmed in *State* v. *Frazier, supra.* However, "out of an abundance of caution" (Tr. 681-82), the court conducted another voir dire to assess competency. Defense counsel was also permitted to question the child.

The record discloses that Albert Richards knew his age and family members, knew that he received a "whipping" from his grandmother when he told a lie, knew that he understood what an oath was after defense counsel explained the question to him, knew the difference between good and bad, and knew that he attended church with his grandmother.

We defer to the trial court's assessment and conclude that the court did not abuse its discretion. Accordingly, this assignment of error is overruled.

### XIV.

Appellant's fourteenth assignment of error states:

"DERRICK EVANS WAS DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW AND A RIGHT TO A TRIAL BEFORE A JURY OF HIS PEERS UNINFLUENCED BY OUTSIDE CONSIDERATIONS IN VIOLA-TION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTI-CLE I OF THE OHIO CONSTITUTION BY THE PROSECUTOR MAKING REFERENCES TO 'OTHER ACTS' DURING CLOSING AR-GUMENT AT THE GUILT PHASE OF THE PROCEEDINGS."

Generally, evidence of previous criminal acts, wholly independent of the criminal offense for which a defendant is on trial, is inadmissible. *State* v. *Thompson* (1981), 66 Ohio St. 2d 496, 497. Evidence of other acts is inadmissible to show the defendant's propensity or inclination to commit an offense. *State* v. *Curry* (1975), 43 Ohio St. 2d 66, 68. The only exceptions to the general rule of inadmissibility are set forth in Evid. R. 404(B):

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person

in order to show that he acted in conformity therewith. *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.*" (Emphasis added).

This rule is in accord with R.C. 2945.49, which provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior to or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

Thus, if the other act tends to show by substantial proof any of those enumerated items, and when it is relevant to prove the defendant's guilt of the offense in question, the other act may be admissible. *State* v. *Broom* (1988), 40 Ohio St. 3d 277, 282; *State* v. *DeMarco* (1987), 31 Ohio St. 3d 191; *State* v. *Flonnory* (1972), 31 Ohio St. 2d 124, 126.

In the present case, appellant takes issue with the following remarks, particularly those that are underlined, made by the prosecutor during the closing argument in the guilt phase of the trial:

"[MR. HUDSON]: This is a heinous crime. What did he go? He went to Columbus and Mr. Carson will tell you that he couldn't have done it because the first thing he told the officers was, 'Hey, I didn't do the murders in Cleveland.'

"I'm sure that he was going to say, 'I'm the murderer they want in Cleveland.'

"He did say that, as a matter of fact. He didn't say, 'I'm the murderer in Cleveland.' He already ran 152 miles to get to Columbus. *And what was he doing down there? He was snatching purses, according to the officers.*

"MR. CARSON: Objection

"MR. SAFERIN: Objection

"THE COURT: Objection sustained.

"MR. HUDSON: You know the conditions he was caught under. What was he going to do? He was going to put battery acid in his arm, sort of a Mexican standoff, if you will, for a while down there until they grabbed him.

"They check him out and, sure enough, the warrants were up here in Cleveland for murder.

"Mr. Carson would suggest: My goodness, he didn't do it because he said he didn't do it down in Columbus. Now, come on. * * *" (Tr. 1015-16 and appellant's brief at p. 71-72).

The trial court properly sustained appellant's objection to the remark that he "was snatching purses" in Columbus. There was no prior evidence elicited by the state to support such a statement, and the appellant's suspicion of purse snatching was not germane to the offenses herein as showing those items enumerated in Evid. R. 404(B).

Although the remark was improper, any error was harmless in light of the court sustaining the objection to the remark and the subsequent charge to the jury not to consider closing arguments as evidence. Furthermore, there were substantial amounts of evidence of guilt apart from the remark at issue upon which to support the conviction of the appellant.

Accordingly, this assignment is overruled.

### XV.

Appellant's fifteenth assignment of error states:

"THE TRIAL COURT ERRED IN ALLOWING THE JURY TO CONVICT MR. EVANS OF AGGRAVATED BURGLARY AND AGGRAVATED ROBBERY. THE OFFENSES CONSTITUTE ALLIED OFFENSES OF SIMILAR IMPORT, AND MR. EVANS' CONVICTION FOR BOTH VIOLATED R.C. 2941.25, THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLES I OF THE OHIO CONSTITUTION."

R.C. 2911.01, Aggravated Robbery, provides:

"(A) No person, in attempting or committing a theft offense, as defined, in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:

"(1) Have a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;

"(2) Inflict, or attempt to inflict serious physical harm on another.

"(B) Whoever violates this section is guilty of aggravated robbery, an aggravated felony of the first degree."

R.C. 2911.11, Aggravated Burglary, provides:

"(A) No person, by force, stealth, or deception, shall trespass in an occupied structure, as defined in section 2909.01 of the Revised Code, or in a separately secured or separately occupied portion thereof, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony, when any of the following apply:

"(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

"(2) The offender has a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;

"(3) The occupied structure involved is the permanent or temporary habitation of any person, in which at the time any person is present or likely to be present.

"(B) Whoever violates this section is guilty of aggravated burglary, an aggravated felony of the first degree."

The standard for determining whether two crimes are allied offenses of similar import requires a two-part analysis:

"In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's *conduct* is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offense." *State* v. *Blankenship* (1988), 38 Ohio St. 3d 116, 117.

Upon reviewing the statutes in question, relative to the first prong of the test, it is clear that the commission of aggravated burglary will result in the commission of aggravated robbery.

Turning to the second prong of the test, we find that the two crimes were not committed separately. The aggravated burglary herein was manifested when the appellant produced a gun and committed the aggravated robberies. (See appellee's brief at p. 20). Accordingly, the appellant could be charged with both offenses, but convicted for only one. *Maumee* v. *Geiger* (1976), 45 Ohio St. 2d 238. Thus, one of the convictions in this assignment must be discharged. Since both offenses are first degree felonies, it is inconsequential which charge is vacated.

Appellant's conviction for Aggravated Burglary (Count Three) is vacated, and the appellant is discharged on the Aggravated Burglary count.

This assignment of error is well taken.

### XVI.

Appellant's sixteenth assignment of error states:

"THE TRIAL COURT ERRED BY DENYING DEFENDANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL ON THE OFFENSE OF AGGRAVATED ROBBERY WHERE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION, THEREBY VIOLATING DEFENDANT'S CONSTITUTIONAL RIGHTS UNDER THE FOURTEENTH AMENDMENTS AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."

Appellant claims the trial court erred by permitting the charge of aggravated robbery of JoAnn Richards to go to the jury as insufficient evidence was presented to prove beyond a reasonable doubt that he deprived Richards of any property.

When reviewing the denial of a motion for acquittal pursuant to Crim. R. 29, the court must view the evidence in a light most favorable to the state to determine if reasonable minds could reach different conclusions as to whether each material element of the crime charged had been proven. *State* v. *Bridgeman* (1978), 55 Ohio St. 261.

In this case, evidence was adduced that appellant arrived at the apartment of Marcellus Williams and JoAnn Richards armed with a gun and knife. After being in the residence for a few minutes, appellant suddenly jumped up, put a gun to Williams' head and demanded money. In addition to money, several items were removed from the apartment shared by both Williams and Richards.

Pursuant to the evidence produced at trial, we find that reasonable minds could reach different conclusions as to whether each material element of aggravated robbery had been proven beyond a reasonable doubt. Accordingly, the trial court correctly overruled appellant's motion for acquittal. This assignment of error fails.

### XVII.

Appellant's seventeenth assignment of error states:

"APPELLANT EVANS WAS DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT REFUSED TO CHARGE THE JURY ON THE LESSER INCLUDED OFFENS-

ES OF MURDER AND VOLUNTARY MAN-SLAUGHTER. THIS REFUSAL VIOLATED THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

Appellant asserts that the trial court should have instructed the jury on the lesser included offenses of murder and voluntary manslaughter.

It is well settled that murder and voluntary manslaughter are lesser included offenses of aggravated murder. *State* v. *Solomon* (1981), 66 Ohio St. 2d 214, 219. However, a court need not give an instruction on a lesser included offense unless the offense is supported by the evidence. *State* v. *Kidder* (1987), 32 Ohio St. 3d 279, 281; *State* v. *Thomas* (1988), 40 Ohio St. 3d 213, paragraph two of the syllabus.

An instruction on murder should be given only if the evidence would reasonably support an acquittal on the felony murder charge and a conviction on the lesser included offense. *State* v. *Clark* (1988), 38 Ohio St. 3d 252, 255; *State* v. *Jackson* (Oct. 5, 1989), Cuyahoga App. No. 55758, unreported.

A review of the state's evidence does not reasonably support the theory that the appellant committed only the murders. Appellant arrived at the apartment armed with a gun and a knife. After engaging the occupants in conversation for a few minutes, appellant suddenly jumped up, put the gun to Williams' head and demanded money. After binding Williams, appellant removed money from his pocket. Wayne Frazier, co-defendant, was observed removing a television set from a bedroom. A broken television set, a shoe tree, a prescription bottle made out to one of the victims, and personal papers belonging to Williams were found in an abandoned service lot. Wayne Frazier directed the police to this location. In light to this evidence, the trial court properly refused to give a murder instruction.

Appellant was entitled to an instruction on voluntary manslaughter if the jury could have reasonably found that the victims provoked appellant and that the serious provocation was reasonably sufficient to have incited him into using deadly force. *State* v. *Lawrence* (1989), 44 Ohio St. 3d 24, 26.

With good reason, appellant does not attempt to argue that the evidence supported a jury instruction on voluntary manslaughter. As the record is deplete of any evidence of provocation, the trial court properly refused to charge on voluntary manslaughter.

This assignment of error is overruled.

### XVIII.

Appellant's eighteenth assignment of error states:

"WHEN A CAPITAL DEFENDANT PRESENTS EXPERT TESTIMONY TO ESTABLISH THE MITIGATING FACTOR IN R.C. 2929.04(B)(3), IT IS ERROR TO ALLOW THE PROSECUTOR TO REBUT THIS MITIGATING FACTOR WITH A COMPETENCY REPORT WHICH ONLY CONCERNS THE APPELLANT'S COMPETENCY TO STAND TRIAL."

At the mitigation hearing in the penalty phase, the defense elicited the testimony of John Kenny, Ph.D., a clinical neuropsychologist, who testified that the appellant was suffering at the time of the act from a mental disease or defect, a mitigating factor under R.C. 2929.04(B)(3). (Tr. 1214-16).[5]

The prosecutor, on cross-examination of Dr. Kenny and over objection, referred to the appellant's competency report prepared at the request of appellant by Dr. Dutton prior to trial. The prosecutor observed that Dr. Kenny, who provided an assessment on the appellant for use in the competency report, stated in that report that appellant was malingering metal illness. (Tr. 1217-21). Additionally, the prosecutor questioned Dr. Kenny about Dr. Dutton's opinion that Evans was malingering mental illness and "intentionally producing false or exaggerated psychological symptoms in order to evade criminal prosecution." *See*, Competency Report, p. 3; appellant's appendix brief at A-29.

On redirect examination, in light of Dr. Dutton's opinion, Dr. Kenny reiterated his direct examination testimony and its conclusion of the existence of a mental disease or defect. (Tr. 1223).

On recross-examination, the prosecutor again attempted to link the opinion of Dr. Dutton to the assessment made by Dr. Kenny. (Tr. 1225).

At the close of recross, the court questioned the witness (Tr. 1227-28):

"[THE COURT] You were asked a question by Mr. Saferin and asked if you would change the answer when he asked whether the defendant suffered a mental disease or defect that would substantially impair his ability to conform his conduct to the requirements of law. And you answered that his mental ability may make it -- would substantially impair his ability to conform to the requirements of the law. Were you saying he suffers from any mental disease?

"THE WITNESS: I think there is a severe range of organic brain function impairment.

"THE COURT: That's not mental disease, is it?

"THE WITNESS: No. I am discriminating that from mental illness.

"THE COURT: My question was is he suffering from mental disease?

"THE WITNESS: He is not suffering from a major mental illness, but he is suffering from mental disease or defect.

"THE COURT: Okay.

"THE WITNESS: Of an organic nature. Is that your question?

"THE COURT: Yes. Thank you. Anything further based on that, Mr. Saferin?

"MR. SAFERIN: I have nothing further.

"THE COURT: Mr. Hudson?

"MR. HUDSON: No.

"THE COURT: Thank you, Doctor. You are excused."

Generally, the admissibility of rebuttal evidence is within the sound discretion of the trial court. *State* v. *Lett* (1958), 106 Ohio App. 285; *State* v. *Lott* (Mar. 16, 1989), Cuyahoga App. No. 54537, unreported, at p. 68.

Appellant argues that the standard for competency to stand trial and establishing a mental disease or defect are inapposite. Thus, the use of the competency report during the mitigation phase was improper. See appellant's brief at p. 91. This argument was addressed and discarded in *State* v. *Cooey* (1989), 46 Ohio St. 3d 20, 23:

"* * * While Cooey's sanity was not at issue, he did raise his alleged mental disorder as a mitigating factor. We cannot accept the proposition that a psychological report on sanity is irrelevant to the existence of a mitigating factor under R.C. 2929.04(B)(3). The issues involved are similar: whether a 'mental disease or defect' existed and, if so, whether and to what degree it may have impaired his cognition and volition. Of course, the issues are not identical, since the mitigating factor requires not a total incapacity but only a lack of 'substantial capacity.' But that does not make the results of the sanity evaluation irrelevant.* * *"

The opinion of Dr. Kenny in the competency report was therefore relevant to the determination of the mitigating factor under R.C. 2929.04(B)(3) in the present case.

Appellant also alleges that use of the report was improper in that the report constituted hearsay evidence. *See*, appellant's brief at 94. The report section referred to by the prosecutor

was a quotation authored by the witness, Dr. Kenny (Tr. 1220-21), in which the witness stated that Evans was malingering mental illness and exhibited brain function impairment rendering him mildly retarded. This section was not hearsay as it was a prior statement by the witness and therefore was properly admitted.

The remainder of the report, that authored by Dr. Dutton, is hearsay. Evid. R. 801(C). Dr. Kenny could not comment on Dr. Dutton's opinion in the competency report since he did not have personal knowledge of those findings. Evid. R. 602.

Any prejudice caused by the confusion created by the prosecutor's attempts to equate feigning mental illness with Evans also feigning a mental defect or disease was minimized by the court's questioning of the witness, which clearly differentiated the two terms and Dr. Kenny's opinion concerning the two. Viewing the totality of the evidence, any error was harmless.

Accordingly, this assignment is overruled.

XIX.

Appellant's nineteenth assignment of error states:

"THE DEATH SENTENCE IMPOSED IN APPELLANT EVAN'S CASE WAS INAPPROPRIATE AND DISPROPORTIONATE AND VIOLATED THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

Appellant contends that the death sentence imposed in his case was inappropriate and disproportionate. We supplement our review of the assigned errors by independently determining whether (1) the evidence supports the jury's and judge's findings of the aggravating circumstances, (2) the statutory aggravating circumstances outweigh the mitigating factors, (3) the trial court properly weighed the statutory aggravating circumstances against the mitigating factors, (4) the death sentence is not excessive or disproportionate to the penalty imposed in similar cases, and (5) the death sentence is consequently appropriate in this case. R.C. 2929.05; *State* v. *Bonnell, supra*.

Appellant was convicted of two counts of aggravated murder. The aggravating circumstances of which appellant were found guilty were (1) that the offense was part of a course of conduct in which the offender purposely killed JoAnn Richards and also purposely killed Marcellus Williams, and also purposely attempt-

ed to kill Derek Speights, and (2) that appellant, on June 13 1975, was previously convicted of murder in violation of R.C. 2903.02, of which an essential element was the purposeful killing or attempt to kill another.

In support of the countervailing mitigating factors of R.C. 2929.04(B), appellant gave an unsworn statement and presented two witnesses, his mother and a doctor employed with the Court Psychiatric Clinic.

In his unsworn statement to the jury, appellant denied killing anyone. The unsworn statement did not raise any other factors that would militate in favor of mitigation.

Appellant's mother's testimony offered nothing of substance. The doctor testified that appellant suffered from a mental disease. Thus, in the doctor's opinion, appellant was likely to have difficulty conforming his conduct to the requirements of law and being aware of the criminality of his acts.

The mental defect was the only evidence of any mitigating factors relating to the commission of the crime. R.C. 2929.047-(B)(1), (2), (3) and (6). Appellant was twenty-nine at the time of the offenses; thus, there is no demonstration that his youth explained or contributed to the offense. R.C. 2929.04(B)(4). Appellant was found guilty of the repeat murder specification. We consider this to be a significant history of a prior criminal conviction. R.C. 2929.04(B)(5). With regard to R.C. 2929.04(B)-(7), we find no other factors relevant to mitigate his sentence.

We find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. We also find that the trial court properly weighed the aggravating circumstances against the mitigating factors in a separate opinion pursuant to R.C. 2929.03(F).

Comparison with other cases in which the death penalty has been upheld leads us to conclude that the sentence imposed is neither excessive, disproportionate nor inappropriate.

The death sentence has been upheld in cases involving course of conduct specifications under R.C. 2929.04(A). *State* v. *Spisak* (1988), 36 Ohio St. 3d 80; *State* v. *Brooks* (1986), 25 Ohio St. 3d 144; *State* v. *Frazier, supra.* By comparison to these cases, we find the penalty here not excessive or disproportionate.

Accordingly, we overruled this assignment of error.

### XX.

Appellant's twentieth assignment of error states:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT EVANS BY INSTRUCTING AS TO ALL THE MITIGATING FACTORS IN R.C. 2929.04(B) WHEN THE DEFENSE HAD NOT RAISED ALL SUCH FACTORS IN ITS MITIGATION PRESENTATION. THE INSTRUCTION VIOLATED MR. EVANS' RIGHTS AND GUARANTEED BY THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 2, 9 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

Appellant contends the trial court improperly instructed the jury as to all the mitigating factors in R.C. 2929.04(B) when all the factors were not raised by the defense.

Initially, we note that this claimed error was not objected to; thus, any error, if any, was waived. Crim. R. 30(A); *State* v. *Long, supra; State* v. *Greer* (1988), 39 Ohio St. 3d 236.

However, we find no error in the trial court's instructions. See *State* v. *DePew* (1988), 38 Ohio St. 3d 275.

This assignment of error is overruled.

### XXI.

Appellant's twenty-first assignment of error states:

"THE TRIAL COURT'S FAILURE TO CONSIDER APPELLANT EVANS' MITIGATING EVIDENCE IN ITS SENTENCING DETERMINATION WAS CONTRARY TO THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 9, ARTICLE I OF THE OHIO CONSTITUTION."

R.C. 2929.03(D)(3) and (F) provide:

"(D)(3) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted to the court pursuant to division (D)(1) of this section, if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or if the panel of three judges unanimously finds, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender. * * *

"* * *

"(F) The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set

forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. ***"

On October 25, 1987, the trial court issued its separate findings pursuant to R.C. 2929.03(F). *See*, appellant's appendix brief at A-12 through 22, inclusive, for a copy of the trial judge's opinion.

Appellant's assertion that the court failed to consider the testimony of Dr. Kenny in support of the mitigating factor under R.C. 2929.04(B)(3) is meritless. *See*, appellant's brief at p. 104-05. The court specifically considered Dr. Kenny's testimony and evidence, but found that it was not credible in light of the totality of the evidence presented in the case. *See*, trial court opinion at appendix brief p. A-16-17.

Appellant's assertion that the court failed to consider mitigating evidence relative to R.C. 2929.04(B)(7), *viz.*, Evans' family and employment history, is likewise without merit. *See*, appellant's brief at 106. The court expressly stated that it considered the testimony and statements of both Evans and his mother, which illuminated appellant's family and employment history, but found that it was not credible. *See*, trial court opinion at appendix brief p. A-17, 20.

Finally, the appellant asserts that the court's finding that Evans was the "leader" caused the court not to recognize the existence of the mitigating factor in R.C. 2929.04(B)(6), as the jury found Evans not to be the principal offender in the murders. (Tr. 1111-12). *See*, appellant's brief at 105-06; and appendix brief at A-17-18. This assertion is without merit as well.

R.C. 2929.04(B)(6) states:

"If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim; * * *"

The trial court's finding that Evans was "the leader" was a recognition of the degree of Evans' participation in the offenses herein and the acts that led to the deaths of JoAnn Richards and Marcellus Williams. *See*, trial court opinion at appendix brief p. A-18.

Accordingly, this assignment of error is overruled.

## XXII.

Appellant's twenty-second assignment of error states:

"THE TRIAL COURT'S COMMENTS TO THE VENIRE AND THE JURY THAT THEIR SENTENCING VERDICT WAS ONLY A 'RECOMMENDATION' DIMINISHED THE JURY'S RESPONSIBILITY FOR ITS VERDICT AND MADE THE RESULTING DEATH VERDICT IN APPELLANT EVANS' CASE UNRELIABLE."

Appellant argues that the trial court diminished the jury's sense of responsibility of instructing the jury that its death verdict was only a recommendation. This issue has been raised and rejected. *State* v. *Broom* (1988), 40 Ohio St. 3d 277; *State* v. *Roe* (1989), 41 Ohio St. 3d 18. We overrule this assigned error.

## XXIII.

Appellant's twenty-third and twenty-fourth assignments of error will be discussed jointly. They state:

"THE PROPORTIONALITY REVIEW THAT THIS COURT MUST CONDUCT IN THE PRESENT CAPITAL CASE PURSUANT TO OHIO REVISED CODE SECTION 2929.05 IS FATALLY FLAWED AND THEREFORE THE PRESENT DEATH SENTENCE MUST BE VACATED PURSUANT TO THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 5 AND 10 OF THE OHIO CONSTITUTION AND OHIO REVISED CODE 2929.05.

## XXIV.

"THE TRIAL COURT ERRED IN IMPOSING THE DEATH SENTENCE ON APPELLANT EVANS. THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 2, 9, 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION ESTABLISH THE REQUIREMENTS FOR A VALID DEATH PENALTY SCHEME. OHIO'S STATUTORY PROVISIONS GOVERNING THE IMPOSITION OF THE DEATH PENALTY, CONTAINED IN REVISED CODE 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04 AND 2929.05 DO NOT MEET THE PRESCRIBED REQUIREMENTS AND THUS ARE UNCONSTITUTIONAL, BOTH ON THEIR FACE AND AS APPLIED TO APPELLANT EVANS."

In these final two assignments of error, appellant complains that the proportionality system and Ohio's death penalty scheme are unconstitutional. These assertions have been repeatedly addressed and overruled. *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164; *State* v. *Steffen* (1987), 31 Ohio St. 3d 111; *State* v. *Henderson, supra.*

Accordingly, we overrule these assigned errors.

Appellant's conviction for aggravated burglary (Count Three) is vacated.

*Judgment affirmed as modified.*

DYKE, P.J., and CORRIGAN, J., concur.

---

[1] Wayne Fazier and appellant also worked for Lempco Industries.

[2] The occupants of the apartment were Marcellus Williams, his girlfriend JoAnn Richards, their six-month-old baby, their seven-year-old son Albert Richards, and Speights. The baby was on the couch and was unharmed; Albert Richards was in the bedroom.

[3] This factual summary relies on Speights' and Albert Richards' testimony. While Michael Frazier testified for the prosecution, he attributed all the stabbings to appellant, in essence testifying that he and his brother were minor participants who only followed appellant's orders to tie up the victims.

[4] Wayne Frazier was tried separately before appellant's trial. He was found guilty by a three-judge panel and sentenced to death. His conviction was affirmed in State v. Frazier (Jan. 11, 1990), Cuyahoga App. No. 54771, unreported. Michael Frazier was scheduled to be tried after appellant's trial; however, he chose to plead guilty to the indictment after the death penalty specifications were dropped. (Tr. 1154).

[5] Only appellant's mother and Dr. Kenny testified at the mitigation phase, along with an unsworn statement by the appellant.