**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John R. DORR and John Grant Pass-
more, Defendants-Appellants.**

No. 79–5598.

United States Court of Appeals,
Fifth Circuit.
Unit A

Feb. 6, 1981.

Anthony Nicholas, Yale G. Phillips, Jr., San Antonio, Tex., for Dorr.

Victor Sherman, Los Angeles, Cal., for Passmore.

LeRoy Morgan Jahn, W. Ray Jahn, Asst. U. S. Attys., San Antonio, Tex., for United States.

Before GOLDBERG, GARZA and TATE, Circuit Judges.

GARZA, Circuit Judge:

The appellants were both charged with conspiracy to import marijuana into the United States from the Republic of Mexico in violation of 21 U.S.C. §§ 952(a) and 963 and conspiring to possess marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. The appellants were also charged with aiding and abetting themselves and other conspirators in the commission of the above offenses in violation of 18 U.S.C. § 2. Following a trial by jury, both appellants were convicted on all three counts. The appellants now raise a number of issues, some of which overlap. Because we find that the prosecutor stepped beyond the acceptable limits in his closing argument, we remand the case for a new trial.

At the trial of appellants, the great bulk of the incriminating testimony against Passmore and the sole damaging testimony against Dorr were given by Terry Wayne Fagan, a private pilot employed by Dorr. Although there were a number of coconspirators in this case, only Passmore and Dorr went to trial. Fagan, a man named Gregory Mark Halteman and a woman named Vivian Gonzalez Hagger pled guilty in return for their testimony, and two other coconspirators became fugitives. Dorr, who is a successful businessman in Pecos, Texas, involved in oil, ranching, real estate and banking, was accused by Fagan as being the supplier of funds for a marijuana smuggling operation based in Mexico. Fagan testified that Dorr had given him large amounts of cash to make such purchases and had given him the use of his credit cards on such junkets. Fagan also testified that Dorr paid the rental charges on the airplanes which were used to smuggle the marijuana out of Mexico. Fagan testified that after he had been forced to destroy a leased plane in Mexico after an unsuccessful attempt to smuggle marijuana, Dorr obtained a loan and paid $190,000 to the aviation company which owned the plane. Fagan also stated that following this transaction, Dorr leased an even more expensive twin engine airplane upon Fagan's recommendation. Fagan's testimony against Passmore was that the latter was the one who had contacts with the marijuana people in Mexico and that Passmore had helped load the airplane with marijuana.

Fagan testified that on April 7, 1978, he landed the leased twin engine plane on a highway near Dimos, Mexico, which is about 40 miles north of Mazatlan. Fagan stated that Passmore and a number of other people loaded about one thousand pounds of marijuana into the plane. Fagan's destination that night was Los Angeles, California, but because of various factors, he realized he did not have enough fuel to fly nonstop. He was to meet certain individuals in Los Angeles who would offload the marijuana. Dorr was not implicated in any way with the upcoming offloading in Los Angeles.

Because of his lack of fuel, Fagan entered the United States south of Presidio, Texas, and landed in Roswell, New Mexico for refueling. The plane had been detected on radar, however, and suspicions were aroused. Sergeant Vance Adams of the New Mexico State Police was requested to investigate any recently landed airplanes at the Roswell Airport. When he arrived at the Roswell Airport, Sergeant Adams saw Fagan's plane. As he walked past the airplane he noticed that the curtains were drawn back in one of the windows allowing

him a view of the interior. Shining his flashlight in the window, he saw a plastic sack with what appeared to be stems protruding from the sack. Sergeant Adams then went into the airport building to contact his office and request assistance. Fagan followed Sergeant Adams and yanked the phone receiver out of his hand at which time the officer drew his gun and arrested Fagan. Sergeant Adams gave *Miranda* warnings to both Fagan and a passenger in the plane who was subsequently indicted and who is now a fugitive. Other law enforcement officers arrived shortly, and Fagan gave the officers his consent to search the plane and handed over the keys to the airplane.

Fagan also testified that Dorr had supplied him with cash while he was in jail. Halteman, who had been involved in the loading of the plane on the highway near Dimos, Mexico, did not refer to Dorr at all and incriminated Passmore by saying that the latter had helped load the marijuana that night. The government also introduced a great number of telephone records, credit card and hotel receipts and flight plans, which it claimed supported Fagan's story. During the presentation of the government's case in chief, the plea bargain agreements of Halteman and Gonzalez were also introduced. A cover letter sent by the United States Attorney's Office was attached to both agreements addressed to the district judge in this case, Judge Dorwin Suttle. The letter explained the ramifications of the accompanying plea agreements.

At the trial, Dorr testified and admitted that he had paid for the crashed plane, but he denied any knowledge, at the time, of its destruction. He stated that Fagan had told him that the plane had been sold to a group of individuals in Tucson, Arizona. Dorr also admitted that he leased the twin engine which was seized in New Mexico. Dorr did not deny that Fagan was his pilot, but he consistently denied that he knew Fagan was using the planes for transporting marijuana. It is clear that Dorr considered Fagan a friend and trusted employee and that he had bestowed upon him a great deal of responsibility as a pilot. Pass-

more did not take the stand. Both defendants presented an array of character witnesses.

Although a great amount of documentary evidence was presented, such records in and of themselves do not indicate any criminal endeavors. Because it was Fagan's testimony which breathed the possibility of criminal activity into those records, the greatest thrust of the defense strategy was to discredit Fagan. Defense counsel attempted this by attacking Fagan's character, his story, the fact that he had entered into a plea bargain with the government and his personal relationships with DEA agents involved in the case.

During final argument by defense counsel, Fagan's credibility was attacked and an implication was left with the jury that the government had been out to convict Dorr. During its closing argument in rebuttal, the government, in an apparent attempt to dilute defense counsel's argument that the government was trying to convict either appellant, stated:

> They would also have you believe, ladies and gentlemen, that this entire conspiracy was cooked up by Mr. Fagan, a conspiracy to get these men, and it was aided and abetted by Mr. Whitworth [DEA agent] and myself. And I believe Mr. Sherman [counsel for Passmore] told you that a Court in this United States can do whatever they want [sic] and he would never question that. Look at the transcript of that proceeding where Mr. Fagan was sentenced when the Judge says, "You have done what I asked you to do." That's Judge Sneed [District Judge for the State of New Mexico who accepted Fagan's guilty plea in state court]. Look at the plea agreements of Mr. Halteman and Miss Gonzalez in which it says [sic], "The Court," that means the Judge, "must decide if these agreements are in the interest of justice and has the sole discretion." The Court has the discretion not to accept them.

I would have to assume then, ladies and gentlemen, that Mr. Sherman and Mr.

Nicholas and Mr. Barrera [defense counsel for Dorr] feel that this Court, Judge Suttle and the Judge up in Rosswell [sic], New Mexico are all out to get their clients. Does that make sense? Does that appeal to your reason? Does that appeal to your common sense?

Although no objection was made at the time of these comments, objections were voiced at the first possible moment after the jury had left the courtroom, which occurred after the judge had given his instructions. Both appellants objected to the above comments made by the prosecutor. The objections were presented as motions for mistrial, which were denied. Defense counsel also requested that the court give a curative instruction on the purposes of plea bargain agreements and the involvement of a judge in such proceedings. This request was also denied by the trial judge. The jury then returned to the courtroom at which time the case was given to them for decision.

■ Initially, we find that a sufficiently contemporaneous objection was made in this case. One of the major purposes of a contemporaneous objection is to allow the trial judge to correct any possible mistaken impressions that might have been left in the minds of the jurors. That purpose was served here, even though the judge refused to give such an instruction. The objections, the motions for mistrial and request for curative instructions had all been made in sufficient time to allow the judge to correct any error if he had chosen to do so. The plain error rule is thus not applicable. *See United States v. Okenfuss*, 632 F.2d 483 (5th Cir. 1980).

■ The test in determining the existence of prosecutorial misconduct regarding closing arguments is whether the remarks were improper and whether they prejudicially affected substantial rights of the defendants. *United States v. Garza*, 608 F.2d 659, 663 (5th Cir. 1979). A prosecutor's duty in closing arguments is to be scrupulous and to avoid all efforts to obtain a conviction by going beyond the evidence before the jury or by putting the sanction of his office behind the testimony of the witnesses. *United States v. Rodriguez*, 585 F.2d 1234, 1243 (5th Cir. 1978), *aff'd in part, rev'd in part on other grounds*, 612 F.2d 906 (5th Cir. 1980) (en banc). The sole purpose of closing argument is to assist the jury in analyzing, evaluating and applying the evidence. *United States v. Herberman*, 583 F.2d 222, 229 (5th Cir. 1978).

■ The prosecutor may refer to matters that are in evidence, and he may even present what amounts to a bolstering argument if it is specifically done in rebuttal to assertions made by defense counsel in order to remove any stigma cast upon him or his witnesses. *United States v. Cotton*, 631 F.2d 63, 66 (5th Cir. 1980).

In the present case, we may have found no difficulty with the prosecutor's closing argument if he had merely questioned the reasonableness of a conspiracy between the DEA agents, the prosecutor and the government witness, since defense counsel had suggested such a possibility. Defense counsel, however, never implicated either the New Mexico state judge who accepted Fagan's plea of guilty or the federal district judge. Nonetheless, the prosecutor discussed the state judge's reasons for accepting Fagan's plea bargain agreement although there was no testimony of the judge's reasons for accepting it. The prosecutor also went so far as to suggest to the jury that defense counsel was contending that both judges were involved in a conspiracy to convict the appellants. No such argument by defense counsel was ever presented.

Although there is no way for this court to know how the jury perceived the case, a thorough reading of the record convinces us that the case was very close, especially in regard to Dorr. The very crux of the jury's decision lay in the choice of credibility between Fagan and Dorr. Dorr's explanation was as credible as Fagan's and was not eroded upon cross-examination. Therefore, the jury had to choose whom to believe. With the scales so closely balanced, the prosecutor's mentioning of the state judge's reasons for accepting a guilty plea and his

inference that Dorr and Passmore were accusing the judges of conspiring to convict them could easily have been enough to sway the jury's decision, when those matters should have had no bearing at all.

The jury is the sole judge of the credibility of witnesses. *United States v. Diharce-Estrada*, 526 F.2d 637, 641 (5th Cir. 1976). In the present case, the prosecutor's argument very possibly destroyed that decision-making process. The first part of the prosecutor's argument could very well have suggested to the jury that since a state judge accepted Fagan's plea, his story must be considered as true *ab initio*, thus supplanting the jury's choice on credibility for that of the judge's. The second part of the challenged portion of the argument was overly prejudicial because it inserted a factor, that of a conspiracy between the judges against Dorr and Passmore, which did not exist in the case at all.

 In determining the overall degree of prejudice in a prosecutor's closing argument, an appellate court may consider the district court's jury instruction and the strength of the evidence against each defendant. *United States v. Rodriguez*, 585 F.2d at 1244. In the instant case, the district judge refused to give a curative instruction, and his general instruction that arguments of counsel are not to be considered as evidence was insufficient to correct the error. The evidence against Dorr was not overwhelming considering that the only witness who implicated Dorr was the very same one whose testimony was impermissibly bolstered by the prosecution. If there had been other untainted witnesses who testified against Dorr or concrete, irrefutable documentary evidence, we may have found the argument in this case to be harmless error. But when the prosecutor's comments directly affected the ultimate and only testimony against Dorr, it cannot be considered harmless error. The case against Passmore is only slightly stronger. Outside of Fagan's testimony, which as we have found above was given far too much weight by the prosecutor's argument, there was only the testimony of Halteman.

Halteman's implication of Passmore might have been enough if it were not for the fact that his plea bargain agreement had been introduced with the aforementioned cover letter to Judge Suttle. In light of the prosecutor's reference to a nonexistent defense theory of both state and federal judicial conspiratorial involvement, Halteman's testimony has also been tainted by the prosecutor's remarks. For the foregoing reasons, we find that the prosecutorial misconduct in this case requires the granting of a new trial for both defendants.

 Defense counsel also objected to the district judge's denial of motions to suppress the search of the airplane, denial of motions for change of venue, the admission of certain evidentiary matters, the imposition of special parole terms on the conspiracy counts and the assessment of costs against the appellants. Except for the imposition of the special parole terms, which may not be assessed on conspiracy counts, *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205, 219 (1980), we find these remaining issues wholly without merit and affirm the court's rulings on those matters. We find that the search of the airplane was proper under both the doctrine of plain view and Fagan's consent to search the airplane. We see no merit in appellants' arguments for change of venue and find that the district court was correct in denying such motions. We find no errors in the evidentiary rulings. We also find no error in the court's assessment of costs which is permitted by 28 U.S.C. §§ 1918 and 1920. Passmore's argument that he has been deprived of equal protection under the Constitution because Judge Suttle is the only district judge in the Western District of Texas who imposes such costs is completely rejected.

Therefore, the district court's rulings on the motions to suppress, the motions for change of venue, the various evidentiary matters and the assessment of costs are affirmed. The case, however, is reversed and remanded for a new trial due to prosecutorial misconduct.

AFFIRMED IN PART, REVERSED IN PART and REMANDED FOR A NEW TRIAL.