OPINION
Defendant-appellant Kourie Deiontez Brown appeals the February 11, 2000 Judgment Entry of the Stark County Court of Common Pleas which found him guilty of one count of aggravated robbery with a firearm specification, and sentenced him accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
On December 20, 1999, the Stark County Grand Jury indicted appellant with one count of aggravated robbery in violation of R.C. 2911.01. The indictment also contained a specification appellant had a firearm on or about his person while committing the offense, in violation of R.C.2941.145. At his December 23, 1999 arraignment, appellant plead not guilty to the charge. The matter proceeded to trial on February 7, 2000, at which time the following evidence was adduced. On October 5, 1999, Katherine Nardecchia was robbed at the Forest Hill Cemetery in Canton, Ohio. Ms. Nardecchia was visiting her son's grave when a man grabbed her from behind, and twisted her left arm behind her back. Ms. Nardecchia testified she felt a hard object next to her head, and heard the man whisper in ear, "drop your purse, don't make a sound or I'll blow your f'ing head off." The assailant then let go of Cher arm, grabbed the purse, and shoved Ms. Nardecchia to the ground. Ms. Nardecchia looked up but was only able to see the assailant running away. She described the assailant as a boy between the ages of sixteen and seventeen, with short hair, cut close in the back. She guessed her assailant was between 5'8" and 5'9". She could see from the side of his face he was a black male, with medium to dark complexion. Ms. Nardecchia testified she was unable to yell for help, but three women nearby walked over to her at which time she told them she had just been robbed. The police were called and an investigation ensued. Cheryl McGirr, who lived behind Glenoak High School close to the cemetery, testified she saw a boy run very fast down the hill from the high school and jump in a car around 6:00 p.m. Ms. McGirr testified she was working at her kitchen sink when she saw the boy racing through her yard. She moved to the living room window to get a better view, and saw the boy get in a car. The car drove away toward the apartments. Ms. McGirr described the boy as a black male approximately 5'6", with short hair. Ms. McGirr stated the boy was wearing a plain white football jersey and dark pants. Finally Ms. McGirr testified she saw two people in the front seat and one person in the back seat, before appellant jumped into the car. Shortly after 6:00 p.m., Jack Barns was walking his dog near the 47th Street cemetery. Mr. Barns testified he saw a red car parked on the street. Mr. Barnes saw a black man run up to the car, jump in the car, and watched the car speed off. Mr. Barns recognized the car to be a maroon Chevy Celebrity with four doors. Mr. Barns could see the driver, a passenger, and another person in the back seat, before the black man jumped into the back seat of the car. Mr. Barns was unable to see the license plate, but he did see a set of white dice hanging from the rearview mirror. One week later, Mr. Barns saw the car again at the Marathon Gas Station at 38th and Cleveland. Mr. Barns recognized it as the same car because of the white dice hanging from the rearview mirror. Mr. Barns wrote the license plate number down and called the police with the information. Canton Police Detective James Guerrieri ran the license plate number supplied by Mr. Barns and identified the owner of the vehicle as Steven Chesser. Detective Guerrieri's investigation revealed Jason Chesser was the person who drove the car on the date of the robbery. Thereafter, Detective Guerrieri was able to determine Joey Hall, Deshawn Williams and Derick Williams were the passengers in the car on the date of the incident. After a number of interviews, Detective Guerrieri received a consistent story from each of the four boys. At trial, Derick Williams testified they picked up appellant at appellant's house. Appellant asked the boys to drive the car around the corner, where he then asked to be let out of the car. The boys watched appellant run up the hill. The boys waited there for appellant. Mr. Williams testified appellant came running down the hill toward the car approximately 3 minutes later. Mr. Williams testified he could see appellant carrying something "cupped up under his shirt." T. at 279. Mr. Williams testified appellant pulled this object out and it was a gun. The boys then dropped appellant off at his house. Derrick testified appellant told him a couple of days after the incident appellant robbed somebody. Derrick asked if the victim was black or white. According to Mr. Williams, appellant responded he did not rob black people. Deshawn Williams, also a passenger in the car on the day of the incident, testified next. DeShawn stated appellant left the vehicle for "like 2 minutes, I guess." T. at 296. He further stated he was just guessing at the time. When appellant got back into the car, he pulled out a gun. When asked whether appellant said anything about the gun or what appellant might have done, Deshawn testified "like earlier he said like when he started to turn to go back to the high school, he just said he robbed somebody that day." T. at 298. Mr. Williams also conceded he told police earlier appellant had told him appellant had just robbed "some lady." T. at 299. Kirk McConnell, a police officer with the Canton Police Department was patrolling the cemetery with his police dog as part of the detail responding to other thefts in the area and the armed robbery of Ms. Nardecchia. On October 12, Officer McConnell had just finished walking his police dog around the cemetery when he noticed appellant walking on the graves on the east side of the cemetery. When appellant saw the police cruiser he immediately changed direction and walked away. Officer McConnell identified himself as a police officer and asked appellant to accompany him back to the cruiser. Appellant told Officer McConnell he was in the cemetery because it was a shortcut to his home. Officer McConnell warned appellant not to walk on the graves again and let the boy go on his way. Appellant's mother and step father testified in appellant's defense. Each testified appellant was in trouble on the day of the incident for not cleaning his room and because they had found an empty gun box in appellant's room. Appellant's mother yelled at appellant and hit him, ordering him to remain in the house for the rest of the evening. Appellant also testified in his own defense. Appellant admitted he left the house to ride with Mr. Chesser and the others, but claimed the boys had gone to the Colonial Club Apartments to retrieve a gun appellant and another individual had previously stolen. Appellant testified he gave this stolen gun to the Williams brothers because he owed them $90. Appellant denied he was ever at the cemetery the evening of the robbery. After hearing all of the evidence, the jury found appellant guilty of the aggravated robbery and the gun specification. In a February 11, 2000 Judgment Entry, the trial court found appellant guilty and deferred sentencing. On March 6, 2000, appellant filed a Motion for a New Trial. This motion alleged perjured testimony, lack of sufficient evidence to sustain the conviction, and newly discovered evidence all mitigated in favor of appellant being afforded a new trial. In a March 7, 2000 Judgment Entry, the trial court imposed a term of five years imprisonment for the aggravated robbery and a mandatory term of three years for the firearm specification. The trial court further ordered the sentences be served consecutively. Appellant filed a notice of appeal of the trial court's March 7, 2000 Judgment Entry. This appeal was assigned appellate Case No. 2000CA00085. The trial court conducted a hearing on the motion for a new trial on May 31, 2000, and June 2, 2000. Appellant called Joseph Hall to testify. Mr. Hall was the backseat passenger in Mr. Chesser's car on the day of the robbery. At the hearing, Mr. Hall testified he sat immediately next to appellant. Mr. Hall did not hear appellant state he robbed anyone, and further testified he believed he would have heard any such comment because of his proximity to appellant. This testimony was in direct opposition to the testimony of Deshawn Williams, the front seat passenger, who said he heard appellant state he had just robbed someone. At the June 2, 2000 portion of the hearing, appellant presented the testimony of Nicholas McDaniel. Mr. McDaniel testified he had a conversation with Derick Williams in which Mr. Williams stated he had lied about appellant making a comment he only robbed white women. Further, Mr. Williams apparently admitted to Mr. McDaniel Mr. Williams had lied about his statement at trial because appellant owed Mr. Williams money and because Mr. Williams thought appellant was trying to place the blame for the robbery on him. In response to the trial court's questioning, Mr. McDaniel explained Mr. Williams never said he had lied about whether or not appellant stated he had actually committed a robbery, just that he lied about the statement appellant made concerning the color of his victim. On June 15, 2000, the trial court denied appellant's motion for a new trial. Appellant timely filed a second appeal from the trial court's denial for his motion for a new trial (appellate case number 2000CA00199). In a July 12, 2000 Judgment Entry, this Court consolidated appellant's two appeals. Appellant assigns the following as error:
 I. THERE WAS NOT SUFFICIENT EVIDENCE TO SUPPORT A FINDING OF GUILT.
 II. THE CONVICTION OF THE APPELLANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE MOTION FOR A NEW TRIAL BASED UPON NEWLY DISCOVERED EVIDENCE DIRECTLY REFUTES THE SINGLE BIT OF EVIDENCE LINKING THE APPELLANT TO THE CRIME AND THUS IT WAS ERROR TO OVERRULE THE MOTION.
 IV. THE ADMISSION OF TESTIMONY WITH REGARD TO ALLEGED PRIOR ACTS WAS PREJUDICIAL AND REQUIRES REVERSAL OF THE VERDICT.
 V. THE STATE'S COMMENTS IN CLOSING ARGUMENT INDICATING THAT THE APPELLANT HAD A HISTORY OF STEALING AND THIEVING WERE PREJUDICIAL, FALSE AND REQUIRED REVERSAL.
 I, II
In appellant's first and second assignments of error, he challenges the sufficiency of the evidence and claims the final judgment was not supported by the manifest weight of the evidence. We disagree. In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus. When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's conviction was based upon insufficient evidence. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997),78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. Appellant concedes the State presented sufficient evidence to establish Ms. Nardecchia had been robbed around 6:00 p.m. on October 5, 1999. Further, appellant concedes the State presented sufficient evidence to establish appellant was in the area of the robbery around the same time and appellant possessed a gun. However, appellant argues there was no evidence to link appellant to the robbery. We disagree. DeShawn Williams testified appellant admitted he had just robbed "some lady" when appellant got back into Mr. Chesser's car. Derick Williams testified appellant admitted to robbing a white woman "because he never robs black people." T. at 284. We find this evidence, combined with the evidence appellant was present in the area with a gun at the time of the incident, if believed, was sufficient and ample, competent, credible evidence to support the jury's verdict. Appellant's first and second assignments of error are overruled.
 III
In appellant's third assignment of error, he maintains the trial court erred in denying his motion for a new trial. The applicable standard of review is whether the trial court abused its discretion. State v. Schiebel (1990), 55 Ohio St.3d 71, 76, para. 1 of the syllabus. An abuse of discretion connotes more than error of law or judgments; the term implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151. The grounds for a new trial are set forth in Crim.R. 33(A)(1)-(6). The statute states, in pertinent part:
(A) Grounds
 A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
* * *
 (4) That the verdict is not sustained by sufficient evidence or is contrary to law. If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or finding as modified;
* * *
 (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.
 Appellant first maintains the verdict was not supported by sufficient evidence as demonstrated at trial and in light of the testimony given at the hearing on appellant's motion for a new trial. In light of our disposition of appellant's first and second assignments of error, we find this argument unpersuasive. We find the jury's verdict was supported by sufficient, competent, credible evidence. Accordingly, the trial court did not abuse its discretion in denying appellant's motion for a new trial on this ground. We also find the trial court did not abuse its discretion in denying appellant's motion for a new trial based upon his claim of newly discovered evidence. As stated in State v. Petro (1947), 148 Ohio St. 505: To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.
Id. at syllabus.
"The granting of a motion for a new trial upon the ground named [newly discovered evidence] is necessarily committed to the wide discretion of the court, and a court of error cannot reverse, unless there has been a gross abuse of that discretion; and whether that discretion has been abused must be disclosed from the entire record." Id. at 507. Appellant's new evidence was the testimony of Nicholas McDaniel. Mr. McDaniel testified Derick Williams admitted to Mr. McDaniel he lied on the stand at appellant's trial. Apparently, Mr. Williams told Mr. McDaniel he lied when he testified appellant told him the woman he robbed was white because he did not rob black people. We find this evidence, if believed, merely impeached or contradicted former evidence, and was therefore not sufficient for a new trial under Petro, supra. Significantly, Mr. McDaniel did not claim Mr. Williams told him he (Williams) lied about appellant's admission appellant had robbed somebody. We find no abuse of discretion in the trial court's conclusion this new evidence did not create a strong probability a different result would have occurred had this evidence been admitted. Even if the Mr. Williams had lied about the race of appellant's victim, there still remained testimony appellant had robbed someone. Appellant's third assignment of error is overruled.
 IV
In appellant's fourth assignment of error, he maintains the trial court erred in permitting the testimony concerning his alleged prior bad acts. Appellant concedes he did not object to these statements. Accordingly, we review this assignment under the plain error standard. Crim.R. 52(B) provides: (B) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See: State v. Long (1978), 53 Ohio St.2d 91; State v. Cooperrider (1983), 4 Ohio St.3d 226. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173. Therefore, we will not disturb a trial court's evidentiary ruling unless we find said ruling to be an abuse of discretion; i.e. unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Adams, supra. Appellant directs this Court's attention to the following exchange between the prosecutor and her witness, Officer Kirk McConnell:
 Q. Did you know at the time he was a suspect in any of the robberies or thefts that had occurred?
A. No ma'am I did not.
Q. When did you find that out?
A. That was later on — — —
T. at 380.
We agree with appellant these statements were objectionable. In fact, had an objection been raised, we would have found this testimony inadmissible. However, we find the admission of this testimony does not rise to the level of plain error. Appellant's fourth assignment of error is overruled.
 V
In his fifth assignment of error, appellant maintains the prosecutor's comments in closing argument indicating appellant had a history of stealing and thieving were prejudicial, false, and created a manifest injustice requiring reversal. We disagree. The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1990), 51 Ohio St.3d 160, cert. denied 112 L.Ed.2d 596; State v. Smith (1984), 14 Ohio St.3d 13. The proper inquiry on review is whether the prosecutor's conduct deprived the defendant of a fair trial. State v. Keenan (1993), 66 Ohio St.3d 402, 405. The Ohio Supreme Court has outlined proper commentary during a prosecutor's closing arguments: The prosecution is normally entitled to a certain degree of latitude in its concluding remarks. State v. Woodards (1966), 6 Ohio St.2d 141 26,215 N.E.2d 568 [3 5 O.O.2d 8], certiorari denied (1966), 385 U.S. 930,87 S.Ct. 2893, 17 L.Ed.2d 212; State v. Liberatore (1982), 69 Ohio St.2d 583,589, 433 N.E.2d 561 [23 O.O.3d 489]. A prosecutor is at liberty to prosecute with earnestness and vigor, strike hard blows, but may not strike foul ones. Berger v. United States (1935), 295 U.S. 78, 88,55 S.Ct. 629, 633, 79 L.Ed. 1314. The prosecutor is a servant of the law whose interest in a prosecution is not merely to emerge victorious but to see that justice shall be done. It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury. United States v. Dorr (C. A. 5, 1981), 636 F.2d 117.
State v. Smith (1984), 14 Ohio St.3d 131, 13-141 470 N.E.2d 883) 885.
Appellant challenges the following comment, made by the prosecutor in closing argument: He is a thief, ladies and gentlemen, and he got brave on October 5. It was no fun anymore just to steal whatever he had been stealing up to that point . . . T. at 442-443.
As in appellant's fourth assignment of error, appellant did not object to this statement. Notwithstanding this fact, we find the prosecutor's statement was not improper. Although appellant asserts there is no evidence appellant had committed any other theft offense, the record demonstrates appellant, himself, testified to stealing a gun from a man's truck. Accordingly, while we note the prosecutor struck a "hard blow," we do not find it to be a "foul blow." Appellant's fifth assignment of error is overruled.
The February 11, 2000, and the June 15, 2000 Judgment Entries of the Stark County Court of Common Pleas are affirmed.
 _____________________ Hoffman, P.J.
Edwards, J. and Reader, V.J. concur