JOURNAL ENTRY AND OPINION
The appellant, Paul Robinson, appeals from the verdict of the Cuyahoga County Court of Common Pleas, Criminal Division, in which the appellant was found guilty of Felonious Assault with a three-year firearm specification. Having reviewed the record of the proceedings and the legal arguments presented by the parties, we affirm the verdict of the trial court.
The underlying criminal act stems from a shooting that occurred on the evening of January 10, 2000 in the lobby of the Magic Johnson Theater at Randall Park Mall. Several bystanders witnessed the shooting, including Officer Michael Turner of the Warrensville Heights Police Department, who was working at the theater as a part-time security guard.
Officer Turner testified that on the night in question, he witnessed two females arguing in the lobby of the theater. As he approached, Paul Robinson pulled out a gun and shot another male who had been accompanying one of the females. Officer Turner testified that after Robinson shot the victim, he turned and looked Officer Turner directly in the eyes before turning to flee. Officer Turner testified that he immediately radioed for help and attempted to follow Robinson from the theater. As he exited the theater, Officer Turner approached the responding squad car and reported Robinson's description and the direction in which he had fled.[1]
Officer Turner then returned to the theater and attended to the victim, later determined to be Anthony Dixon.[2]
The responding officer, Todd Simpson, testified that he radioed the description he received from Officer Turner to other officers in the area, and those officers apprehended Robinson. At the time of apprehension, Robinson had discarded his red coat, the gun and the magazine from the gun. Nevertheless, officers responding to the call were able to recover the coat and the magazine from the gun. Officer Simpson testified that Robinson was handcuffed and placed in the cruiser. Officer Simpson further testified that Robinson was distraught and, while in the cruiser, he made various spontaneous comments.
Sergeant Mark Wentz testified that he arrived shortly after Robinson had been placed in the cruiser. Due to the uncontrolled statements of Robinson, Sergeant Wentz formally mirandized him, and Robinson stated he understood those rights.[3] Sergeant Wentz testified that he questioned Robinson as to the location of the gun, and Robinson indicated where the gun was located. After the Miranda warning, the responding officers were able to recover the gun in close proximity to the theater entrance. Sergeant Wentz testified that despite being mirandized, Robinson continued to make uncontrolled incriminating comments in the presence of the officers on the scene.
Robinson was transported to the North Randall Police Department and placed in the female cell block due to his emotional state. Detective John Turner testified that while at the station, Robinson continued to make spontaneous remarks concerning the incident despite repeated warnings as to the evidentiary value of many of the statements. Nevertheless, Robinson continued to speak about the incident and the remorse he felt for the victim and disgrace he had caused his family. Additionally, Detective Turner testified that Robinson attempted to commit suicide while in his cell but was unsuccessful in his attempt.
Robinson was indicted on one count of felonious assault with a three-year gun specification. He was convicted of the charge on April 19, 2001, and on May 17, 2001, the trial court sentenced him to three years on the firearm specification and three years on the underlying charge of felonious assault, for a total of six years. It is from this conviction that he now appeals.
The appellant assigns three assignments of error for this Court's review.
The appellant's first assignment of error states:
 I. THE DEFENDANT'S INCULPATORY STATEMENTS WERE USED AGAINST HIM AT TRIAL IN VIOLATION OF THE FIFTH AMENDMENT AND MIRANDA V. ARIZONA.
During the motion to suppress hearing, counsel for the appellant argued to suppress statements made by the appellant when he had not been formally mirandized. The appellant now focuses his argument on whether or not he had made a knowing and voluntary waiver of his Miranda rights. The appellant argues that the State did not demonstrate that the appellant understood his verbal Miranda rights against self-incrimination; therefore, no inculpatory statements made by the appellant should have been admitted at trial. This argument is without merit and not well taken.
A suspect must be warned before questioning that he has a right to remain silent and that anything he says can be used against him in court. Miranda v. Arizona (1966), 384 U.S. 436. Recently, in Dickersonv. United States (2000), 530 U.S. 428, the United States Supreme Court reaffirmed the requirements set forth in Miranda v. Arizona.
In Dickerson, the Court noted:
 * * * [T]he admissibility in evidence of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings. These warnings (which have come to be known colloquially as "Miranda rights") are: a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questions if he so desires." Id. quoting Miranda, 384 U.S. at 479.
In the absence of any evidence to show that the defendant knowingly and intelligently waived his rights before making inculpatory statements to the police, such statements are inadmissible. Tague v. Louisiana (1980),444 U.S. 471. Although there is no rigid rule requiring that the warnings must be a virtual incantation of the precise language contained in the Miranda opinion, they must be sufficient to apprize the accused of those rights. State v. Ramirez (1999), 135 Ohio App.3d 89, 96 citing State v.Dailey (1990), 53 Ohio St.3d 88.
In the case at hand, the appellant was apprehended fleeing from the parking lot of the Magic Johnson Movie Theater by officers responding to a call concerning a shooting. Testimony shows that the appellant was handcuffed and placed in the back of a patrol cruiser. At this point, the only officer to speak to the appellant was Officer Simpson. Officer Simpson testified that he asked the appellant where the gun was since the officers had not been able to recover it and out of fear that the gun could be recovered by others. This can hardly be considered interrogation and further, the appellant did not answer this question, but only rambled on with statements concerning his remorse. Thereafter, appellant was verbally mirandized by Sergeant Wentz, and only at this point did the appellant admit to knowing the location of the gun.
Specifically, Sergeant Wentz testified as follows:
 Q. At any time, did you give the defendant his rights?
A. Yes, I did.
Q. His Miranda rights, and when was that?
 A. After we had located several of the items that were involved for evidence in the case, I had a concern over the weapon not being found and I went back to the car and basically, I couldn't shut him up. He kept on talking so, to not cause any conflict, I gave him his verbal rights at that time, Mirandized him, and my concern was to get the weapon out of the parking lot, or out of the cinema, someplace where it couldn't be picked up by somebody else and be used in any manner.
On the issue of knowing and intelligent waiver of his Miranda rights, Sergeant Wentz testified:
 Q. Okay. What attempts did you make to see to it that he had an attorney before you started questioning him?
 A. I gave him the Miranda warning. I asked him if he understood his rights. He said he did.
From the evidence presented at trial, the appellant was given his Miranda warning, and the appellant chose to continue speaking with the officers. Testimony revealed that, after apprehension, the appellant almost immediately began to make statements to the police officers. In the interest of protecting the appellant's rights, Sergeant Wentz formally mirandized the appellant. The statements given by the appellant to Sergeant Wentz were obtained only after the appellant was formally mirandized, and the appellant knowingly and voluntarily waived his rights.
In addition, the appellant argues that the statements that he made at the police station should have been suppressed as the appellant had not knowingly and intelligently waived his rights at the crime scene; therefore, the subsequent statements are inadmissible as products of the earlier interrogation. As well, this argument is without merit.
As the evidence at trial revealed, Detective John Turner did not attempt to question the appellant at the station, but instead the appellant repeatedly blurted out statements of remorse and concern for the victim's well-being to the detective. Moreover, the detective testified that he reminded the appellant he did not want to take a statement from the appellant at that time. The detective testified that he was not attempting to interrogate the appellant at this point, but as the detective passed the holding cell, the appellant continued to make spontaneous utterances and outbursts within earshot of not only the detective but other officers in the vicinity of the holding cell. The statements made by the appellant were spontaneous utterances and certainly admissible at trial under the law.
Last, it is worth noting, notwithstanding the testimony of the officers concerning the appellant's statements, the appellant was positively identified by Officer Turner as the shooter and by an employee of the theater. Michelle Levia, the manager on duty at the movie theater, testified that she observed the shooting and identified the appellant as the shooter. Specifically, Ms. Levia testified:
 A. I yelled, please don't shoot. We made eye contact, we looked at each other and he just proceeded to shoot anyway in the direction of where the women were.
Therefore, even assuming arguendo that the appellant's statements should have been suppressed, there exists ample evidence to convict the appellant of the charged crime, and any error would be harmless at best. The appellant's assertion that there existed only slight, circumstantial evidence to convict is farcical in light of the overwhelming evidence produced at trial positively identifying him as the shooter. As such, the appellant's first assignment of error is not well taken.
The appellant's second assignment of error states:
 II. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT DURING THE MOTION HEARING AND AT TRIAL WHICH CAUSED SUBSTANTIAL PREJUDICE TO MR. ROBINSON.
The appellant presents numerous arguments outlining the alleged misconduct of the prosecuting attorney at the Motion to Suppress hearing and during trial. The allegations include (1) the withholding of evidence that the appellant had been previously interrogated by officers at the scene of the crime, (2) that the prosecutor attacked the veracity of the defense attorney, (3) that the prosecutor committed misconduct in seeking to hold the jurors to their "promises" made in voir dire, and (4) that the prosecutor committed misconduct in expressing to the jury her belief that the defendant was guilty.
The prosecution is normally entitled to a certain degree of latitude in its concluding remarks. State v. Woodards (1966), 6 Ohio St.2d 14, 26, certiorari denied (1966), 385 U.S. 930, 87 S.Ct. 289; State v.Liberatore (1982), 69 Ohio St.2d 583, 589. A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones. Berger v. United States (1935), 295 U.S. 78, 88,55 S.Ct. 629, 633. The prosecutor is a servant of the law whose interest in a prosecution is not merely to emerge victorious, but to see that justice shall be done. It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury. United States v. Dorr (C.A. 5, 1981), 636 F.2d 117.
The test regarding prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. Dorr, supra, at 120. To begin with, the prosecution must avoid insinuations and assertions which are calculated to mislead the jury. Berger, supra, 295 U.S. at 88, 55 S.Ct. at 633. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. State v.Thayer (1931), 124 Ohio St. 1; DR 7-106(C)(4) of the Code of Professional Responsibility. Moreover, the Code provides that an attorney is not to allude to matters which will not be supported by admissible evidence, DR 7-106(C)(1), and "* * * [a] lawyer should not make unfair or derogatory personal reference to opposing counsel. * * *" EC 7-37.
Generally, conduct of a prosecuting attorney at trial shall not be grounds for reversal unless the conduct deprives the defendant of a fair trial. State v. Apanovich (1987), 33 Ohio St.3d 19; State v. Papp
(1978), 64 Ohio App.2d 203. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. State v.Smith (1984), 14 Ohio St.3d 13. In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury still would have found the appellant guilty. State v. Maurer (1984), 15 Ohio St.3d 239, 266;State v. Dixon (March 13, 1997), Cuyahoga App. No. 68338, unreported. The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.
In the instant case, there was no prosecutorial misconduct. The appellant attempts to twist the evidence elicited at trial into an appearance of impropriety by the prosecuting attorney. As established, the appellant was mirandized at the scene of the crime prior to any type of interrogation being conducted. It is worth noting that the only interrogation at the scene was in relation to recovering the discarded gun, an issue of public safety. No other type of interrogation was conducted at this point. The utterances by the appellant at the station were clearly spontaneous and admissible. Moreover, the appellant's argument that many of the prosecutor's statements during trial and in closing were prejudicial is specious at best. The jury was still required to determine whether there was sufficient credible evidence to convict the appellant. It is well settled that what counsel says in opening statement and closing argument is not evidence, and the court gave that instruction at trial. The evidence presented at trial was admissible, and the comments by the prosecuting attorney were proper. Further, as previously stated, not only was the appellant positively identified by Officer Turner as the shooter, but the movie theater manager witnessed the entire event and testified that the appellant was the perpetrator of the crime in question. As such, the appellant's second assignment of error is not well taken.
The appellant's third assignment of error states:
 III. THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO OBJECT TO THE INTRODUCTION OF INCRIMINATING STATEMENTS THAT WERE NOT REVEALED DURING THE HEARING ON THE MOTION TO SUPPRESS, AND TO OTHER INSTANCES OF PROSECUTORIAL MISCONDUCT.
Last, the appellant's assertion that he was denied effective assistance of counsel is unfounded. In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668, State v. Brooks (1986),25 Ohio St.3d 144. In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith
(1985), 17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299.
In the instant matter, there was no error made by the appellant's trial counsel. The appellant's suggestion that he would not have been convicted but for the oral statements is unfounded and clearly ignores the testimony of the eyewitnesses. Moreover, the appellant must demonstrate that the alleged error rose to the level of plain error since these issues were waived in the trial court. Crim.R. 52(B). As there has been no such demonstration, the appellant's third assignment of error is not well taken.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J. AND JAMES J. SWEENEY, J., CONCUR.
[1] Officer Turner testified that the appellant was wearing a red coat and denim pants as he fled from the movie theater.
[2] There is some confusion as to the victim's true identity as the trial court record reflects that the victim is known as Anthony Dixon as well as Nicholas Robinson.
[3] At the time of trial, Sergeant Mark Wentz had been promoted to the position of Chief.