[Cite as *State v. Gibson* , 2011-Ohio-1651.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :
                                        :
    Plaintiff-Appellee,              :      Case No. 10CA3174
                                        :
    vs.                              :      **Released: March 31, 2011**
                                        :
MARK A. GIBSON,                         :      DECISION AND JUDGMENT
                                        :      ENTRY
    Defendant-Appellant.             :

APPEARANCES:

Stephen K. Sesser, Spetnagel and McMahon, Chillicothe, Ohio, for Appellant.

Matthew S. Schmidt[1], Ross County Prosecutor, and Richard W. Clagg, Ross County Assistant Prosecutor, Chillicothe, Ohio, for Appellee.

McFarland, J.:

{¶1} Appellant Mark A. Gibson appeals his conviction in the Ross County Court of Common Pleas after a jury found him guilty of possession of a deadly weapon while under detention, a felony of the second degree in violation of R.C. 2923.131.  On appeal, Appellant raises three assignments of error, arguing that 1) Appellant was denied his constitutional right to a fair trial due to the misconduct of the prosecuting attorney; 2) Appellant was deprived of his right to effective assistance of counsel; and 3) Appellant's conviction was not supported by

[1] Since the filing of this appeal, Matthew S. Schmidt is now the Ross County Prosecuting Attorney rather than Michael M. Ater.

sufficient evidence.  Having reviewed the record, we find no plain error regarding the prosecutor's allegedly improper remarks and overrule Appellant's first assignment of error.  We also conclude that Appellant received effective assistance of counsel and overrule his second assignment of error.  Further, we find that a reasonable jury could have found that the prosecution proved the essential elements of the charged crime beyond a reasonable doubt, and overrule Appellant's third assignment of error.  As such, we affirm the judgment of the trial court.

## FACTS

{¶2} On November 17, 2009, Appellant was an inmate working in the kitchen at the Ross Correctional Institution.  At the end of his shift, corrections officer Rhonda Pummill ("Pummill") conducted a routine search of Appellant's person to insure that he was not removing contraband from the kitchen.  Inside Appellant's jacket pocket, Pummill found a combination lock that had been placed inside of a sock.  Recognizing this as contraband, Pummill seized the lock in a sock and escorted Appellant to a supervisor.

{¶3} Subsequently, Trooper James Hannon ("Hannon") interviewed Appellant about the incident with the lock in a sock.  Appellant admitted that he had the lock in a sock in his possession and that "it was a bad move on [his] behalf" to have it and he "shouldn't be carrying stuff like that."  Appellant

explained that he used the lock in a sock to break up his laundry soap so it would

not stick to his clothes, but he had no intent to use it as a weapon. Appellant stated

that he had been using the item in his room when he had to report to the kitchen for

work, and placed the item in his jacket pocket before going there.

{¶4} At trial, both Pummill and Hannon testified about their experiences

with locks in socks. Both were familiar with a lock in a sock and stated that it was

typically used as a weapon. A person would grip the sock as a handle, with the

lock suspended in the far end of the sock, and swing the lock-end like a flail.

Inmates would usually target another's head when swinging the lock in a sock and

the resulting damage from a single blow includes severe lacerations and heavy

bruising.

{¶5} After the prosecution rested, Appellant rested without testifying, calling

any witnesses, or presenting any evidence. Closing arguments ensued, during

which the prosecutor referred to the lock in a sock as a "weapon," yet Appellant

did not object. The prosecutor stated that Appellant had conceded that he had

possessed the "weapon." The prosecutor also stated:

> Now, of course, the defendant claims that he did not use [the lock in a
> sock] as a weapon. Well, you will notice that absent from the charge
> in this case is any requirement that it be used as a weapon. There is
> nothing in this statute that indicates that it had to be used at any point
> in time, *it is the possession that makes it a deadly weapon.* And it's
> not even what you may have been using it for, he claims he's just
> using it to break up laundry soap. * * * [E]ven if we just assumed for
> the sake of argument that the defendant was using something like this,

using this weapon to break up laundry soap, that still does make it –
that doesn't turn it into something that's no longer a deadly weapon[.]
You can take a six inch butcher knife and use it to break up soap, but I
guarantee you that six inch butcher knife is still a weapon. * * * So,
it's not a matter of what he was claiming to use it for what his intent
may have been, even if you believed that. The question is, is this a
deadly weapon? You will hear the judge's instructions; there is a
legal definition for deadly weapon that you have to follow in this case.

(Emphasis added.) Again, Appellant did not object to this or any portion of the

prosecutor's closing argument.

## ASSIGNMENTS OF ERROR

"I.     APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A
        FAIR TRIAL DUE TO THE MISCONDUCT OF THE PROSECUTING
        ATTORNEY.

"II.    APPELLANT WAS DEPRIVED OF HIS RIGHT TO EFFECTIVE
        ASSISTANCE OF COUNSEL.

"III.   APPELLANT'S CONVICTION WAS NOT SUPPORTED BY
        SUFFICIENT EVIDENCE."

## ASSIGNMENT OF ERROR I

{¶6} In his first assignment of error, Appellant contends that he was denied a

fair trial due to the prosecutor's misconduct. Appellant argues that the

prosecutor's reference to the lock in a sock as a "weapon" during closing

argument, the prosecutor's misleading statement that "it is the possession of it

(referring to the lock in the sock) that makes it a deadly weapon," and the

prosecutor's comment about Appellant's belief as to whether the item was a deadly

weapon, were all improper and denied him a fair trial. We disagree.

{¶7} "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith* (1984), 14 Ohio St.3d 13, 470 N.E.2d 883, citing *United States v. Dorr* (C.A. 5, 1981), 636 F.2d 117, at 120. See, also, *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 46, at ¶44. However, "[p]rosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record." *State v. Turner*, 4th Dist. No. 08CA3234, 2009-Ohio-3114, at ¶40, citing *State v. Harp,* 4th Dist. No. 07CA848, 2008-Ohio-3703, at ¶20, citing *State v. Lott* (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293. We must view the closing argument in its entirety when determining whether a remark was prejudicial. Id., citing *State v. Treesh* (2001), 90 Ohio St.3d 460, 466, 739 N.E.2d 749. "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *Turner* at ¶40 (internal quotation omitted), citing *State v. Gapen,* 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, at ¶92, quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78.

{¶8} Here, Appellant did not object to any of the prosecutor's statements and has waived all but plain error. *State v. Beebe*, 4th Dist. No. 10CA2, 2011-Ohio-681, at ¶15, citing *State v. McDougald*, 4th Dist. No. 07CA3157, 2008-Ohio-1398, at ¶16; *State v. Tackett*, 4th Dist. No. 06CA3103, 2007-Ohio-6620, at ¶28. "Notice

of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 97, 372 N.E.2d 804. "Under a plain error analysis, reversal is warranted only when the outcome of the trial clearly would have been different without the error." *Beebe* at ¶10, citing *Long* at paragraph two of the syllabus.

{¶9} In this case and viewing the prosecutor's comments in context, we cannot say Appellant was denied a fair trial or that the outcome of the trial would have been different without them. First, the prosecutor did refer to the lock in a sock as a "weapon" during his closing argument. Appellant, however, does not state why this is improper, how it prejudiced him, or how the outcome of the trial would have been different without the comments.

{¶10} The jury was to determine whether it was a deadly weapon and whether Appellant recklessly possessed it. The prosecutor directed the jury to the judge's instruction for the definition of a deadly weapon. Given the context, we cannot say this comment prejudiced Appellant or deprived him of a fair trial.

{¶11} Third, while Appellant argues that the prosecutor improperly commented on his state of mind, the record contains no such reference. Appellant had told Hannon that he had the lock in a sock, "it was a bad move on [Appellant's] behalf" to have it, and he "shouldn't be carrying stuff like that." The

prosecutor stated during closing argument, "The defense has [conceded] the fact that he did possess the weapon, he admitted that it was in his jacket pocket." This was not a comment on Appellant's state of mind. It was merely the prosecutor reiterating that Appellant had admitted possessing the lock in a sock. Thus, the prosecutor's comment was not improper.

{¶12} After considering all of the prosecutor's comments together, we cannot say that they prejudiced Appellant's rights. Nor can we say that the outcome of the trial clearly would have been different without them, or that there was a manifest miscarriage of justice. Accordingly, we overrule Appellant's first assignment of error.

## ASSIGNMENT OF ERROR II

{¶13} In his second assignment of error, Appellant contends that he was deprived of effective assistance of counsel. Appellant argues that his counsel failed to object to the prosecutor's improper comments during closing argument and failed to call any witnesses on Appellant's behalf, which prejudiced him. We disagree.

{¶14} "In order to establish ineffective assistance of counsel, an appellant must show that counsel's representation was both deficient and prejudicial." *State v. Michael*, 4th Dist. No. 09CA887, 2010-Ohio-5296, at ¶15, citing *In re Sturm*, 4th Dist. No. 05CA35, 2006-Ohio-7101, at ¶77; *Strickland v. Washington* (1984),

466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Deficient representation means counsel's performance was below an objective standard of reasonableness. To show prejudice, an appellant must show it is reasonably probable that, except for the errors of his counsel, the proceeding's outcome would have been different." (Citations omitted). Id. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Hankison*, 4th Dist. No. 09CA3326, 2010-Ohio-4617, at ¶105, citing *Strickland*, 466 U.S. at 689 (internal quotation omitted). "'Moreover, the strategic decision of a trial attorney will not form the basis of a claim of ineffective assistance of counsel, even if there may have been a better strategy available.'" Id., citing *State v. Komora* (Apr. 4, 1997), 11th Dist. No. 96-G-1994, citing *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189.

{¶15} In our view, Appellant has failed to demonstrate that his trial counsel's performance was deficient or prejudicial. As previously noted, Appellant conceded possessing the lock in a sock.

{¶16} Appellant now argues that his counsel should have called witnesses to testify that they had observed soap in Appellant's jacket when Pummill had searched him. Appellant, however, has only offered an alternative strategy and has

failed to overcome the presumption that his counsel's decision not to call any witnesses was strategic. Appellant has also not demonstrated how this failure to call additional alleged witnesses prejudiced him.

{¶17} Similarly, Appellant's argument that his counsel should have objected to the prosecutor's closing argument fails on the same grounds. Thus, we find that Appellant's counsel's performance was neither deficient nor prejudicial, and was effective. Accordingly, we overrule Appellant's second assignment of error.

## ASSIGNMENT OF ERROR III

{¶18} In his third assignment of error, Appellant contends that his conviction was not supported by sufficient evidence and argues that the lock in a sock is not a deadly weapon and he did not alter the lock or the sock in any way.

{¶19} When determining whether the record contains sufficient evidence to support a conviction, we must determine "whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (superseded on other grounds), citing *State v. Eley* (1978), 56 Ohio St.2d 169, 172, 383 N.E.2d 132. See, also, *State v. Bange*, 4th Dist. No. 10CA3160, 2011-Ohio-378, at ¶13. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." *Jenks*, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d

560. The relevant inquiry is not how we might interpret the evidence, but rather, "after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.

{¶20} R.C. 2923.131(B) provides that "[n]o person under detention at a detention facility shall possess a deadly weapon." R.C. 2923.11(A) defines a deadly weapon as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." To convict Appellant, the jury would have had to have found that the lock in a sock was capable of inflicting death and either 1) designed or specifically adapted for use as a weapon, or 2) possessed, carried, or used as a weapon.

{¶21} Here, with the testimony of Pummill and Hannon that a single blow from a lock in a sock would cause severe lacerations and bruising, and that it was typically used to strike an opponent's head, a reasonable jury could find that a lock in a sock was capable of inflicting death.

{¶22} Likewise, Pummill and Hannon testified that locks in socks were typically used as weapons. This testimony supports the conclusion that when Appellant placed the lock in the sock, he had either designed an instrument for use as a weapon, or specially adapted two innocuous items for use as a single weapon. While Appellant may not have altered either item, he did combine them in a

manner that greatly augmented their potential lethality and created a new and distinct item, the primary purpose of which was a weapon.  Viewing the evidence in a light most favorable to the prosecution, it is conceivable that although Appellant claimed his lock in a sock had a more benign purpose, the jury did not believe Appellant's explanation that he used it to break soap.  That is, the jury could have found, based upon Pummill and Hannon's testimony, that Appellant designed or specially adapted the lock in a sock for use as a weapon.  Thus, there was sufficient evidence for the jury to find  Appellant's lock in a sock was a deadly weapon.

{¶23} Finally, Appellant seems to argue that because there was only a remote possibility that the lock in a sock would be used as a deadly weapon, he could not have been found to have recklessly possessed a deadly weapon.  This argument, however, misinterprets the language of the offense.  The trial court stated, "Before you can find the defendant guilty, you must find beyond a reasonable doubt that * * * the defendant, Mark A. Gibson, did recklessly possess a deadly weapon while under detention at a detention facility."[2]  Recklessly is an adverb modifying the verb "possess."  How possible it was that Appellant was going to use the lock in a sock as a weapon was immaterial to whether he had possessed it.  Appellant's comments to Hannon that he had the lock in a sock in his

---

[2] The prosecutor had asked that the jury not be instructed as to a mens rea, believing the offense to be one of strict liability.  The trial court, however, included a mens rea of recklessness.

cell, and that he had then placed it in his jacket on his way to the kitchen, allowed the jury to find that Appellant, at a minimum, recklessly possessed the lock in a sock.

{¶24} Based on the evidence in the record we find that there was sufficient evidence for any reasonable jury to find that the prosecution proved the elements of possessing a deadly weapon while under detention beyond a reasonable doubt. Accordingly, we overrule Appellant's third assignment of error and affirm the judgment of the trial court.

**JUDGMENT AFFIRMED**.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

<u>IF</u> A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

Abele, J: Concurs in Judgment and Opinion.
Harsha, P.J.: Concurs in Judgment and Opinion as to Assignments of Error I & III and Concurs in Judgment Only as to Assignment of Error II.

For the Court,


BY: _____
Matthew W. McFarland, Judge

### NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**